# EXHIBIT A

2024 WL 5703970
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Norma CISNEROS, Individually and on Behalf of All Others Similarly Situated, Plaintiff,
v.
NUANCE COMMUNICATIONS, INC., Defendant.

No. 1:21-cv-04285
|
Signed October 4, 2024

**Attorneys and Law Firms**

Brandon Michael Wise, Peiffer Wolf Carr Kane Conway & Wise LLP, St. Louis, MO, for Plaintiff.

David Charles Layden, Elena Marie Olivieri, Jenner & Block LLP, Chicago, IL, for Defendant.

ORDER

John J. Tharp, Jr., United States District Judge

 *1  For the reasons set forth in the Statement below, the defendant's motion to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [16] is granted. The Amended Complaint is dismissed with prejudice. Judgment will be entered in favor of the defendant. Civil case terminated.

STATEMENT

Plaintiff Norma Cisneros brings this suit under Illinois's Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"). Cisneros, an Illinois citizen, is a customer of Charles Schwab, a securities broker and financial advisor. Am. Compl. ¶¶ 1, 33, ECF No. 14; see also infra note 2. Cisneros alleges that in 2017, she began using Charles Schwab's voice ID program, which allows customers to use their voice to identify themselves when they call the bank for information or assistance. Id. ¶¶ 34-38. Defendant Nuance Communications, Inc. provides Charles Schwab with the voice authentication technology behind this voice ID program. Id. ¶ 60. Cisneros alleges that when she enrolled in the voice ID program, she did not know that her "voiceprint," one of the types of biometric identifiers enumerated in BIPA, would be collected, utilized, and stored by Nuance. Id. ¶ 81; 740 ILCS 14/10.

Cisneros alleges that Nuance violated BIPA in two ways: (1) by failing to inform her that it would be collecting and storing her biometric information and failing to obtain a written release from her consenting to that collection, as required by 740 ILCS 14/15(b); and (2) by failing to institute, maintain, and adhere to a publicly available policy establishing a retention schedule and guidelines for the permanent deletion of biometric data (at most three years after its last interaction with her), as required by 740 ILCS 14715(a).[1] Am. Compl. ¶¶ 95-114. Cisneros filed a putative class action against Nuance in the Circuit Court of Cook County, which Nuance then removed to federal court. Notice of Removal, ECF No. 1. Nuance moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), Cisneros amended, and Nuance now moves to dismiss again. Mot. to Dismiss, ECF No. 10; Am. Compl., ECF No. 14; Mot. to Dismiss, ECF No. 16.

[1] Nuance has not challenged the plaintiff's standing to bring these claims. However, "[a] *sua sponte* inquiry into subject-matter jurisdiction is prudent in the BIPA context because 'standing requirements in Illinois courts are more lenient than those imposed by Article III.' " Duerr v. Bradley University, 590 F. Supp. 3d 1160, 1166 (C.D. Ill. 2022) (citing Bryant v. Compass Grp. USA, 958 F.3d 617, 622 (7th Cir. 2020)). To plead a concrete and particularized harm sufficient for standing under Section 15(a), a plaintiff must allege a defendant's failure not only to institute and maintain a publicly available policy, but a failure to comply with that policy such that the plaintiff's biometric data has been wrongfully retained. See Fox v. Dakkota Integrated Systems, LLC, 980 F.3d 1146, 1155 (7th Cir. 2020). Cisneros

alleges that Nuance has never informed her whether or not they intend to delete her biometrics, and that it has failed to comply with all of Section 15(a)'s mandates, including adherence to a compliant, publicly available, retention policy. Am. Compl. ¶¶ 46, 86, 96-97. Informed by other courts in this jurisdiction which have found minimal allegations of unlawful retention sufficient to confer standing under Section 15(a), we similarly find Cisneros's pleading sufficient to demonstrate a concrete and particularized harm under Section 15(a). *See Heard v. Becton Dickinson & Co.*, 524 F. Supp. 3d 831, 839-40 (N.D. Ill. 2021) (plaintiff alleged that defendant "has not and will not destroy plaintiff's and the class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied," alleging a concrete and particularized harm"); *Marsh et al. v. CSL Plasma Inc.*, 503 F. Supp. 3d 677, 682-83 (N.D. Ill. 2020) (allegation by plaintiff that they were "aggrieved by Defendant's failure to destroy their biometric data when the initial purpose for collection or obtaining such data has been satisfied" was more than a "mere failure to disclose a retention policy" and established standing).

 **\*2**  Nuance's first and primary argument is that Section 25(c) of BIPA precludes Cisneros's claims. Section 25(c) provides that "[n]othing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c). (That carve out is no doubt the reason that Schwab is not a defendant in this case. [2] ) In its motion, Nuance also seeks the shelter of the Section 25(c) carve out, asserting that Cisneros's claims ultimately will "apply" BIPA to Charles Schwab because the injunctive relief she seeks will require Charles Schwab to take certain actions, such as notifying its customers that Nuance is capturing and storing their biometric information. Memo. in Support of Mot. to Dismiss 8. Nuance construes the term "in any manner" broadly, arguing that because Section 25(c) prohibits BIPA from applying "in any manner" to a financial institution like Charles Schwab, it prohibits even indirect effects on those institutions. Defs.' Reply in Support of Mot. to Dismiss 3, ECF No. 22.

[2]  Cisneros does not identify Charles Schwab as a financial institution in her Amended Complaint. However, Nuance has asked the Court to take judicial notice of public records indicating that Charles Schwab is a securities broker-dealer registered with the Securities and Exchange Commission, which the Court is permitted to do without converting this motion to dismiss into a motion for summary judgment. *See Est. of Brown v. Arc Music Grp.*, 523 Fed. App'x 407, 411 (7th Cir. 2013). Securities broker-dealers are subject to Title V of GLBA. 15 U.S.C. § 6809 (Title V applies to "any institution the business of which is engaging in financial activities described in section 1842(k) of Title 12"); 12 U.S.C. § 1843(k)(4) (activities "considered to be financial in nature" include "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities ... [p]roviding financial, investment, or economic advisory services ... [and] [u]nderwriting, dealing in, or making a market in securities.")

Nuance is correct that Cisneros alleges that "Nuance does not require its clients [*i.e.*, Charles Schwab] to acknowledge that Nuance is capturing and storing this sensitive biometric information when a user uses one of Nuance's products on the client's website" and that Nuance's clients are also not "required to link to the Nuance privacy statement such that any disclosures made there are known to the client's customers." Am. Compl. ¶¶ 76-77. Cisneros also alleges more broadly that Nuance failed to interact with Charles Schwab customers such that those customers were informed of Nuance's voiceprint collection. But those allegations merely underscore Cisneros's claim that Nuance has not taken any action – either directly with users of the voice ID program or through Nuance's client Charles Schwab – to ensure that it is complying with BIPA. It does not follow that Cisneros's request for injunctive relief necessarily implicates Charles Schwab. Cisneros seeks "injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring the Defendant to comply with BIPA's

requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein." *Id.* ¶¶ 104, 114. But nothing in the pleading indicates that compliance would need to be effected through Charles Schwab. *See Davis v. Jumio Corp.*, No. 22-cv-00776, 2023 WL 2019048, *5 (N.D. Ill. Feb. 14, 2023) (where plaintiff sued a software provider to a non-party cryptocurrency marketplace, it was "difficult to see how requiring [the software provider] to comply with BIPA's notice and consent provisions leads to BIPA being applied in any manner to [the marketplace]," which "would not have any affirmative obligation under BIPA to change [its] [a]pp.")

While the Court is not persuaded by Nuance's argument that the plaintiff's claims are barred by Section 25(c) because of their potential indirect effect on a financial institution, Nuance has also presented, as supplemental authority, a recent ruling from the U.S. District Court for the District of Delaware that bears on the proper interpretation of Section 25(c). Am. Mot. for Leave to Submit Supp. Auth., ECF No. 30. That case, *McGoveran v. Amazon Web Services, Inc.*, involved the financial services company John Hancock, which, like Charles Schwab, offered a voice authentication program for customers calling to discuss their accounts. No. 1:20-cv-01399-SB, 2023 WL 2683553, *1 (D. Del. Mar. 29, 2023). The plaintiff customer sued not John Hancock but the technology company behind the authentication system, Pindrop Security, Inc., which the plaintiff alleged "extract[ed] the callers' unique biometric data to authenticate them." *Id.* at *2. Like Nuance, Pindrop moved to dismiss on the basis that Section 25(c) barred the plaintiff's claims. *Id.* at *5. However, rather than asserting that Section 25(c) applied because the plaintiff's claims would affect John Hancock, Pindrop argued that it qualified for the exception on its own, because it was itself a financial institution subject to Title V of GLBA. *Id.* After close examination of the relevant statutes and regulations, the Delaware court agreed and dismissed the claims against Pindrop. *Id.* at *8. *McGoveran* appears to be the first case extending the Section 25(c) financial institution exemption to voice authentication vendors.

**\*3** The *McGoveran* court's ruling is persuasive and its reasoning applies to Nuance.[3]

3    The Court expressly gave Cisneros opportunity to respond to *McGoveran* (*see* Minute Order at ECF No. 31), and Cisneros did not do so. It is therefore appropriate for the Court to assess the merits of the *McGoveran* court's reasoning as applied to Cisneros's claims.

In analyzing Section 25(c)'s financial-institution exception, the *McGoveran* court found first that it borrows GLBA's definition of "financial institution"— a conclusion with which this Court agrees, along with many other courts in this district. *Id.* at *5; *see also Patterson v. Respondus, Inc. et al.*, No. 20 C 7692, 2022 WL 7100547, *3-4 (N.D. Ill. Oct. 11, 2022) (compiling cases). Title V of GLBA defines "financial institution" as "any institution the business of which is engaging in financial activities as described in section 1843(k) of Title 12." 15 U.S.C. § 6809(3)(A). 12 U.S.C. § 1843(k), in turn, applies to bank holding companies and enumerates the types of activities those companies are permitted to engage in under that title. Subsection (k)(4) lists specific examples of activities which "shall be considered to be financial in nature" and are thus permissible activity for a bank holding company to engage in. That list includes "any activity that the [Federal Reserve] Board has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto[.]" 12 U.S.C. § 1843(k)(4)(F).

In support of its motion, Pindrop pointed to a Federal Reserve Board order, effective as of November 10, 1999 and now codified at 12 C.F.R. § 225.86(a)(2)(iii), finding that "authenticating the identity of customers conducting financial and nonfinancial transactions are activities closely related to banking," and allowing a group of bank holding companies to enter into a joint venture to provide customer identity verification services. 2023 WL 2683553 at *6 (citing 86. Fed. Res. Bull. 56, 59). The court found that the Board's approval of authentication activity for bank holding companies pulled Pindrop's authentication services for John Hancock into the ambit of "financial activities" via § 1843(k)(4)(F). *Id.* at *7.[4] Because Pindrop was engaged in the "financial activities" described by § 1843(k), it was a "financial institution" as defined by

Title V of GLBA, and therefore exempt from BIPA by Section 25(c). [5] *Id.*

[4] The *McGoveran* court found that GLBA "applied its privacy regulations to 'any institution' that engages in ... authentication activity, whether ... a bank holding company or not." 2023 WL 2683553 at *7. It may read the Board's order too broadly to encompass authentication services on their own, absent a connection to a financial transaction. A private club, for example, may use identity authentication services, but the vendor providing those can hardly be said to be a "financial institution" that should be exempt from BIPA. It is not necessary to limn the reach of that order definitively, however, because in this case Nuance is obviously providing services to a client that qualifies as a financial institution.

[5] *McGoveran* also examined a regulation promulgated under GLBA which similarly applies to financial institutions subject to Title V of GLBA, 12 C.F.R. § 1016.1(b)(1). *Id.* at *7. The regulation includes a "special definition" of "financial institution" for entities that are subject to FTC enforcement: "any institution the business of which is engaging in financial activities as described in [12 U.S.C. § 1843(k)]. For purposes of this paragraph ... an institution that is significantly engaged in financial activities is a financial institution." 12 C.F.R. §§ 1016.3(l)(3)(i); 15 U.S.C. § 6805(a)(7). The special definition goes on to provide examples of financial institutions, which include other types of business encompassed by 12 U.S.C. § 1843(k)(4)(F). 12 C.F.R. § 1016.3(l)(3)(ii). While unnecessary to our ruling here, the Court generally agrees that the regulation provides additional support for the classification of authentication services for financial transactions as "financial activities" under § 1843(k).

**\*4** Nuance, like Pindrop, provides voice authentication services for customers of financial and banking institutions. The Federal Reserve Board has found that "authenticating the identity of persons conducting financial and nonfinancial transactions" is "closely related to banking." 12 C.F.R. § 225.86(a)(2)(iii). Businesses that engage in activities "closely related to banking," as determined by the Board, are "financial institutions" under Title V of the GLBA. 12 U.S.C. § 1843(k)(4)(F); 15 U.S.C. § 6809(3)(A). And to come full circle in this statutory scheme, Section 25(c) of BIPA exempts financial institutions covered by Title V of the GLBA from its requirements.

\* \* \* \* \*

For the foregoing reasons, the Court concludes that Nuance is a financial institution subject to Title V of the GLBA, and that pursuant to Section 25(c), Nuance is therefore exempt from any obligations under BIPA—at least with respect to the authentication services it provides to Schwab. Its motion to dismiss plaintiff's claims is granted. Because this ruling is based on an interpretation of law, amendment would be futile. Further, the plaintiff declined to respond to Nuance's identification of *McGoveran* as supplemental authority, and has not requested leave to further amend. Accordingly, the dismissal is with prejudice, the case will be terminated, and judgment will issue in favor of Nuance.

**All Citations**

Slip Copy, 2024 WL 5703970

---