UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT BERNSTEIN, GINA GREEDER, AND JAMES LONERGAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE GLOBAL, INC. AND COINBASE, INC.<br><br>Defendants. | Case No. 1:25-cv-05313<br><br>Honorable Sharon Johnson Coleman, Judge<br><br>Honorable Young B. Kim, Magistrate Judge |

**RESPONSE TO DEFENDANTS'**
**JULY 3, 2025 MOTIONS AND NOTICES FOR PRESENTMENT**

Plaintiffs Scott Bernstein, Gina Greeder and James Lonergan (collectively, "Plaintiffs"), by and through their undersigned counsel, submit the following response to Defendants Coinbase Global, Inc. and Coinbase, Inc.'s (collectively, "Defendants" or "Coinbase") Motion for an Extension of Time to Respond to the Complaint (the "Extension Motion") (ECF 22) and Motion to Stay Proceedings (the "Stay Motion" and together with the "Extension Motion," the "Motions") (ECF 24), which are both noticed for presentment on **July 9, 2025** at **10 a.m.** before the **Hon. Sharon Johnson Coleman**.[1]  As outlined below, Coinbase's Motions are the latest delay tactic in a more than two-year campaign to prevent Coinbase's customers from presenting their claims pursuant to the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/15, first in

---

[1] Plaintiffs are filing a single omnibus response to both Motions.

arbitration before the American Arbitration Association ("AAA") and now before this Court. In opposition to the Motions, Plaintiffs state as follows:

1. Plaintiffs were members of a group of over 10,000 Coinbase users from Illinois represented by undersigned counsel who filed individual demands for arbitration with the American Arbitration Association ("AAA") in March and April 2024, under Coinbase's User Agreement. *See* Class Action Complaint, *Bernstein v. Coinbase Glob., Inc. et al.*, No. 25-cv-05313, ¶51 (May 13, 2025). The demands alleged that Coinbase violated BIPA through the collection of biometric data during its customers' onboarding and identity verification process. This process requires a customer to upload a government ID as well as to take a selfie and upload it to Coinbase during the account creation process. Coinbase does not provide its customers with sufficient BIPA disclosures, or request consent related to its biometric collection practices or its relationship with third party identity verification services, Jumio and Onfido, that supply Coinbase with facial recognition software.

2. Coinbase is not a financial institution under BIPA because as a cryptocurrency exchange, it is not "a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c).

3. Coinbase requested appointment of an AAA Process Arbitrator to decide supposed "threshold issues" before merits arbitrations could commence. On June 28, 2024, the AAA appointed a Process Arbitrator. *See id.* at ¶¶53-54.

4. On December 31, 2024, the Process Arbitrator denied most of Coinbase's requests while declining to address several others. *See id.* at ¶¶54-55.

5. The Process Arbitrator ruled that the parties should proceed to merits arbitration to resolve any remaining issues.

6. On March 3, 2025, AAA assessed Plaintiffs and Coinbase each their share of administrative fees so that merits arbitrator selection could begin in each of the individual cases. Plaintiffs paid their portion of the fees on March 20, 2025. Coinbase refused to pay its portion of the fees. *See id.* at ¶57.

7. On April 16, 2025, AAA administratively closed the arbitrations, permitting Plaintiffs to bring their claims in court. *Id.* at ¶60; *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 622 (7th Cir. 2024) (holding that parties may proceed to court when AAA administratively closes arbitration proceedings based on a respondent company's failure to pay their share of arbitration fees).

8. On May 13, 2025, Plaintiffs filed the Class Action Complaint. ECF 1.

9. On May 14, 2025, the Action was assigned to this Court. Also on May 14, 2025, Plaintiffs filed executed waivers of service on behalf of Defendants, which set Defendants' deadline to answer or otherwise respond to the complaint on or before July 14, 2025. ECF 10, 11.

10. On May 15, 2025, this Court set an initial case status conference for July 14, 2025 and directed the parties to meet and confer to draft a joint status report to be filed no later than July 9, 2025. ECF 12.

11. Throughout June, Plaintiffs' counsel repeatedly emailed Defendants' counsel to schedule the meet and confer. Ex. A.

12. After ignoring several requests by Plaintiffs to meet and confer, Defendants finally indicated they were available, at the earliest, on July 1, 2025. *See id.*

3

13. On June 30, 2025, the day before the meet and confer, counsel for Coinbase requested a phone call with a lawyer representing Plaintiffs. *See* Ex. B. This call was the first time that counsel for Coinbase raised the issue of staying the entire Action pending the outcome of an appeal pending before the Seventh Circuit, *Cisneros v. Nuance Communications, Inc.*, 2024-02982 (7th Cir.), which Coinbase viewed as warranting a stay of the case because it pertains to the "financial institution" exemption in BIPA, 740 ILCS 14/25(c). The *Cisneros* appeal was noticed on November 1, 2024. In the appeal, the *plaintiff-appellant* filed her opening brief on January 31, 2025.

14. On July 1, 2025, during the meet and confer, Coinbase also raised the issue of extending its time to respond to and/or answer the Complaint until its contemplated motion to stay pending the *Cisneros* appeal was resolved. Unlike the representation in the Extension Motion, Plaintiffs did not give Coinbase an answer to the request for an extension during the meet and confer on July 1, 2025, but promised to revert with an answer the next day. Coinbase also indicated that regardless of the outcome of its request to stay this Action, it intended to move to dismiss under Rule 12(b)(6) and for a stay of discovery pending its motion to dismiss.

15. On July 2, 2025, counsel for Plaintiffs informed Coinbase's counsel that Plaintiffs did not consent to an extension of the responsive pleading deadline of July 14, 2025. *See* Ex. C.

16. On July 3, 2025, Coinbase filed the Motions, seeking a stay of its time to respond and/or answer the complaint or discovery pending the Seventh Circuit's decision in *Cisneros*. Nothing prevented Coinbase from seeking a stay or an extension of its time to respond and/or answer the complaint through noticed motion well in advance of the meet and confer deadline for the status report or its response deadline, rather than the day before a federal holiday.

17.     Regardless, the Motions are meritless. A "request for a stay is a request for extraordinary relief, equitable in character, and the movant bears a heavy burden." *Schmude v. Sheahan*, 2004 WL 1179418, at *3 (N.D. Ill. May 25, 2004) (Ex. D) (citing *Winston-Salem/Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers); *Chan v. Wodnicki*, 67 F.3d 137, 139 (7th Cir.1995)).

18.     Courts in this district "disfavor[] [motions to stay] because they bring resolution of the dispute to a standstill." *Sullivan v. Sony Music Ent.*, 2014 WL 13111889, at *2 (N.D. Ill. July 15, 2014) (Ex. E) (citing *Coss v. Playtex Prods., LLC*, 2009 WL 1455358, at *1 (N.D. Ill. May 21, 2009) (Ex. F); *New England Carpenters Health and Welfare Fund v. Abbott Laboratories*, 2013 WL 690613, at *1-2 (N.D. Ill. Feb. 20, 2013) (Ex. G)).

19.     "District courts have broad discretion in managing discovery" and may, "for good cause, limit the scope of discovery or control its sequence to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Harper v. Cent. Wire, Inc.*, 2020 WL 5230746, at *1 (N.D. Ill. Sept. 2, 2020) (Ex. H) (quoting Fed. R. Civ. P. 26(c)(1)). The party seeking the stay "must show that good cause exists," and the Court looks to "factors such as whether the stay will prejudice the non-movant; whether the stay will simplify the issues in the case; and whether the stay will reduce the burden of litigation for the parties or the court." *Id.*

20.     Because the appeal in *Cisneros* is not relevant to the issues in this case, Defendants' motion for a stay should be denied to avoid further delay of Plaintiffs' ability to prosecute this action. *Harper*, 2020 WL 5230746, at *2 ("Where the Court finds that a stay of discovery is unlikely to significantly expedite the litigation and may actually slow it down, it will decline to enter the stay."); *Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 162 (N.D. Ill. 1993) (denying motion to stay that was "purely [] a vehicle to delay the inevitable search for the truth"). As discussed

5

above and in the Complaint, Defendants have been delaying Plaintiffs attempts to present these claims for years.

22. The stay motions should be denied for three reasons. First, *Cisneros* does not involve any of the typical threshold legal issues that would warrant a stay, such as standing, statute of limitations, or qualified immunity. Instead, the appeal is taken from a motion to dismiss under Rule 12(b)(6), which typically does not meet the standard for invoking a stay of an action. *See Bilek v. Am.' s Health Ctr. Inc.*, 2021 WL 10298831, at *3 (N.D. Ill. July 30, 2021) (Ex. I) ('[A] stay of discovery is generally appropriate only when a party raises a potentially dispositive threshold issue such as a challenge to a plaintiff's standing ... or pending resolution of qualified immunity claims. A motion to dismiss for failure to state a claim under Rule 12(b)(6) is usually insufficient.").

22. Specifically, Cisneros was a customer of Charles Schwab, an SEC registered broker-dealer. Nuance was a vendor that provided voice authentication services to Charles Schwab. Cisneros sued Nuance directly (not Charles Schwab), alleging that Nuance violated BIPA by failing to disclose that it would be collecting and storing "voiceprints" without obtaining written consent to that collection and by failing to institute, maintain, and adhere to a publicly available retention schedule and guidelines for the permanent deletion of the voiceprints. The District Court granted Nuance's Rule 12(b)(6) motion. Critically, the Court relied on undisputed, judicially noticed evidence that Charles Schwab was covered by BIPA's "financial institution" exemption by virtue of its status as an SEC broker-dealer, before crediting Nuance's argument that it was also exempt from BIPA because it was providing services to a financial institution. *Cisneros v. Nuance Commc'ns, Inc.*, 2024 WL 5703970, at *4 (N.D. Ill. Oct. 4, 2024) (Ex. J) ("Nuance is therefore

6

exempt from any obligations under BIPA—at least with respect to the authentication services it provides to Schwab").

23. Second, there is no overlap between the issues on appeal in *Cisneros* and the issues Coinbase is likely to raise in a hypothetical motion to dismiss. In the Stay Motion, Defendants misrepresent the first issue raised by plaintiff-appellant in *Cisneros*. *See* Stay Motion at 2. The first question before the Seventh Circuit in *Cisneros* is: "Did the District Court err in dismissing Plaintiff's FAC without giving Plaintiff notice that it was considering an argument not raised by Nuance?" Stay Motion Ex. B at 1. In *Cisneros*, the District Court *sua sponte* identified the financial institution issue based on supplementary authority concerning a 2023 case in the District of Delaware (that is also on appeal right now before the Third Circuit Court of Appeals), which the plaintiff claimed they did not have a full opportunity to respond to. *See McGoveran v. Amazon Web Servs., Inc.*, 2023 WL 2683553 (D. Del. Mar. 29, 2023) (Ex. K); *McGovern v. Amazon Web Servs.*, 2024-3215 (3d Cir.). This anomalous procedural posture alone warrants denial of the stay. If the Seventh Circuit reverses on this issue or remands for further briefing, it will not reach any issues regarding the "financial institution" exemption under BIPA. *See Rasho v. Walker*, 2019 WL 8437116, at *2 (C.D. Ill. Mar. 28, 2019) (Ex. L) (assessing the "merits of the[] appeal" in finding a stay "not warranted.").

24. The second and third issues on appeal in *Cisneros*—whether the District Court erred in dismissing the Complaint because the applicability of the "financial institution" exemption is typically resolved after discovery, and whether Nuance is a financial institution—will not produce any guidance for this case. Coinbase is correct that numerous cases from this District have held that whether a company "qualifies as a financial institution for purposes of BIPA's exemption presents a question of fact" that should not be resolved on a motion to dismiss unless

the pleadings make it clear that the defendant is in fact a financial institution. *See Davis v. Jumio Corp.*, 2023 WL 2019048, at *4 (N.D. Ill. Feb. 14, 2023) (Ex. M); *see also Deyerler v. HireVue, Inc.*, 2024 WL 774833, at *4 (N.D. Ill. Feb. 26, 2024) (Ex. N) (motions to dismiss are "limited in scope to the sufficiency of the allegations set forth in the complaint"); *Fee v. Ill. Inst. of Tech.*, 2022 WL 2791818, at *6 (N.D. Ill. July 15, 2022) (Ex. O) ("BIPA's [financial institution] exemption presents a question of fact better addressed at a later stage in the proceedings").

25. However, the Seventh Circuit is not being asked to overrule these cases. Instead, the plaintiff-appellant is asking the Seventh Circuit to reverse the District Court's ultimate conclusion that Nuance can invoke the financial institution exemption because it was providing services to Charles Schwab, a financial institution. Critically and unlike this case, Cisneros did not dispute that Charles Schwab was a financial institution in responding to the motion to dismiss.

26. Here, Plaintiffs dispute that Coinbase, a cryptocurrency exchange which is not an SEC registered broker-dealer, is a financial institution. *Cisneros* will offer no guidance on this issue.

27. Third, any stay would greatly prejudice Plaintiffs. As explained in more detail above, Plaintiffs filed their claims in arbitration beginning in March 2024, prevailed in a Process Arbitration, but were prevented from having their cases decided on the merits by Coinbase's refusal to pay its share of the arbitration fees. This led to over a year of delay before this Action was even filed. Coinbase should not be relieved of its obligations to respond to the Complaint or participate in discovery on the slight chance that the Seventh Circuit's decision in *Cisneros*, in which briefing has not yet been completed, might say something relevant to the financial institution exemption under BIPA more broadly. *Hayes v. Bd. of Educ. for City of Chicago*, 2021 WL 8153761, at *2 (N.D. Ill. Dec. 22, 2021) (Ex. P) ("discovery in this case has waited long enough,

and the discovery Plaintiff indicates she wishes to begin is not so complex and burdensome … that it ought to wait longer").

28. Notably, Defendants have made no attempt to substantiate a burden of continuing discovery, and Plaintiffs here have sought injunctive relief to avoid continued violations of biometric privacy rights which will only be further delayed should Defendants' motion be granted. *Harper*, 2020 WL 5230746, at *4 ("Courts in this circuit find that broadly decrying the time and expense that is expected to be associated with responding to discovery, without any substantiation, does not establish good cause for staying discovery."); *see also Radio Corp. of America v. Igoe*, 217 F.2d 218, 220 (7th Cir.1955) (the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.").

29. Further, the appeal in the Seventh Circuit will not be dispositive of Plaintiffs' claims, which include a count under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(c). In the unlikely and purely speculative event that the Seventh Circuit's decision provides any clarity as to whether the allegations in the Complaint suggest that Coinbase is a financial institution exempt from BIPA, this would not dispose of Plaintiffs' claims that the collection and use of biometric identifiers constituted an unfair and deceptive business practice. *See Hayes*, 2021 WL 8153761, at *1 ("a stay of discovery is generally appropriate only when a party raises a potentially dispositive threshold issue such as a challenge to a plaintiff's standing[.]"); *Cohn*, 147 F.R.D. at 162 ("We hold to the principal [sic] that 'motions to stay discovery are not favored and are rarely appropriate where the resolution of the dispositive motion may not dispose of the entire case.'").

30.     Finally, the Extension Motion should also be denied. In the event the Court denies the Motions, a twenty (20) day extension of Defendants' time to respond to the Complaint is not warranted. Extension Motion at 3. Defendants claim that they "need an extension of time to continue investigating complex issues and preparing an appropriate responsive pleading." Extension Motion at 2. However, Defendants also claim that they already informed Plaintiffs that their BIPA claims were "meritless" prior to the filing of this action because Coinbase is within the financial institution exemption. Stay Motion at 1. While Plaintiffs are confident the evidence will show that Coinbase is not a financial institution, Coinbase does not need nearly three weeks to "investigate" an argument that it claims it already developed, in a case that was first filed in arbitration more than a year ago and was filed in this Court in May.

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendants' Motions. However, should the Court desire briefing on the Stay Motion, Plaintiffs request an expedited briefing schedule with Plaintiffs' responsive brief to be filed 14 days after Defendants' brief with no reply. Plaintiffs do not believe any further briefing is required on the Extension Motion, and that the Court can address Defendants' response deadline at the previously scheduled conference on July 14, 2025.

Dated: July 7, 2025                                             Respectfully submitted,

                                                                **LABATON KELLER SUCHAROW LLP**

                                                                By: _____
                                                                Jonathan Gardner (admitted *pro hac vice*)
                                                                Carol C. Villegas (admitted *pro hac vice*)
                                                                Jonathan D. Waisnor (admitted *pro hac vice*)

James M. Fee (admitted *pro hac vice*)
Danielle Izzo (admitted *pro hac vice*)
Brent E. Mitchell (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
Fax: 212-818-0477
jgardner@labaton.com
cvillegas@labaton.com
jwaisnor@labaton.com
jfee@labaton.com
dizzo@labaton.com
bmitchell@labaton.com

*Attorneys for Plaintiffs Scott Bernstein, Gina Greeder, James Lonergan and the Proposed Class*

**WALLACE MILLER**
Mark R. Miller
Matthew J. Goldstein
150 N. Wacker Drive
Suite 1100
Chicago, IL 60604
Telephone: 312-663-8282
mrm@wallacemiller.com
mjg@wallacemiller.com

*Local Counsel for Plaintiffs and the Proposed Class*