# Exhibit V

| | |
|---|---|
| In the Arbitration between: | American Arbitration Association |
| Individual Claimants, Claimants | Case No. 01-24-0003-0061 |
| vs. | Ruling No. 2 |
| Coinbase, Inc., Respondent | Process Arbitrator: William E. Hartsfield |

## Ruling

## Background:

**1.** The Respondent is a multinational, publicly traded company operating a cryptocurrency exchange.

**2.** In September 2023, the Claimants' Counsel wrote to the Respondent that Counsel represented over 19,000 individuals, alleging the Respondent violated the Illinois Biometric Information Privacy Act (BIPA) by improperly collecting their biometric identifiers and biometric information. (Resp. Sept. 9, 2024 Brief, Exh. 10, (RX10)).

**3.** In January 2024, the Claimants and the Respondent mediated this dispute but did not settle.

**4.** In March 2024, the Respondent's Counsel wrote to the Claimant's Counsel about their advertisements relating to the Respondent's alleged BIPA violations. (RX12).

**5.** The Claimant's Counsel responded urging over 20,000 individuals had claims against the Respondent based on its BIPA violations. (RX13).

**6.** Later, over 10,400 Claimants filed individual Demands for Arbitration against Respondent— each alleging BIPA violations—over 7,900 in March 2024, and over 2,500 more in April 2024. (RX1, RX14, and RX15).

**7.** Each Demand alleged,

   • Each Claimant "is a natural person who is a Coinbase user and has uploaded a photo of their government ID and a selfie to the Coinbase Platform to verify their identity while residing in the State of Illinois."

   • Coinbase violated Sections 15(a), (b), and (d) of BIPA, 740 ILCS 14/15(a), (b), and (d), through allegedly possessing, collecting, and disclosing biometric information and biometric identifiers allegedly without obtaining consent by virtue of the IDV Process.

   • Coinbase violated the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1 et seq. based on the Respondent's BIPA violation.

(RX1).

**8.**     Each Demand alleged the same facts and the same individual experience.

**Process Arbitrator**

**9.**     Each party requested the appointment of a Process Arbitrator.

**10.**     The AAA appointed the undersigned as the Process Arbitrator.

**Preliminary Hearing and Scheduling and Procedure Ruling**

**11.**     Under the Consumer Arbitration Rules of the American Arbitration Association (AAA), effective September 1, 2014 (AAA Rules), and the Mass Arbitration Supplementary Rules, effective January 15, 2024 (MA Rules) (collectively Rules), the parties attended a preliminary management hearing before the Process Arbitrator. The Process Arbitrator issued a Scheduling and Procedure Ruling dated August 14, 2024. (SAP).

**12.**     The SAP provided, "If either party believes any item in this Ruling does not reflect the parties' agreements or objects to any item in this Ruling, the party must notify the AAA Case Manager by August 27, 2024." Neither party filed any objection.

**13.**     As reflected in the SAP, in that hearing, the parties agreed that

- the Coinbase User Agreement effective August 24, 2023 applied to all Claimants (User Contract). (SAP ¶ 2).

- The Rules will apply as supplemented by the rules agreed to by the parties in their Contract. However, per Consumer Rule 1, the Rules are essential terms of their agreement. Per MA Rule 1, where inconsistencies exist among the MA Rules and other AAA-ICDR rules, the MA Rules govern. (SAP ¶ 3).

- The parties agreed that the [Process] Arbitrator has jurisdiction to decide his jurisdiction and to decide any issue over which he has jurisdiction. (SAP ¶ 7).

- The parties agreed they modified any requirement in the Contract that [the Process Arbitrator] be licensed to practice law in California. (SAP ¶ 8).

- The parties agreed that the Federal Arbitration Act [FAA] governed the Contract's arbitration provisions and the [Process] Arbitrator's jurisdiction. If a party urges that any other law governs the issues submitted to the [Process] Arbitrator or his jurisdiction, then the party will raise that topic in its brief so that the other party may address the topic in its response. (SAP ¶ 10).

- The Ruling on the issues submitted to the [Process] Arbitrator will be a **reasoned** Ruling. (SAP ¶ 20).

(SAP) (emphasis in original).

ANALYSIS AND RULING

**14.** Per MA Rule 6(f), the Ruling provides reasons for the rulings based on all the material on file. Still, while the Process Arbitrator considered each, the Ruling does not recite every fact or reason in support of it.

**15.** While the Ruling does not address every argument made, the Process Arbitrator considered each.

**16.** For any position urged by any party that is not addressed in this Ruling, the Process Arbitrator carefully and fully considered it and then either rejected it or determined that he did not need to determine its correctness.

**17.** References to exhibits or other materials are not exhaustive or exclusive. Rather, references are representative samples. An error may exist in the number cited in a reference. Per the Rules, the parties may ask for clarification for any reference.

## Contract Interpretation

**18.** The Process Arbitrator applied general principles of contract interpretation to the Contract (defined in paragraph 21).

**19.** The parties offered different positions regarding governing law. The Process Arbitrator did not observe any differences among the FAA, California law, or Illinois law regarding the general principles of contract interpretation applied here, and the parties did not identify any. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, (2019).

**20.** For example, in construing a written contract, a tribunal seeks to ascertain the parties' intentions as expressed in the contract and to construe it to reach a reasonable result based on that intent. To achieve this objective, a tribunal examines and considers the entire writing to harmonize and give effect to all provisions so that none will be rendered meaningless, and seeks to avoid a construction that is unreasonable, inequitable, and oppressive. Generally, tribunals attach the meaning given by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances before and contemporaneous with making the contract. Tribunals give the parties' words their plain, grammatical, and customary meaning, and construe them from a utilitarian standpoint, bearing in mind the particular business activity covered. When contract provisions appear to conflict, they should be harmonized if possible to reflect the parties' intentions.

## Contract

**21.** The parties' contract consists of the User Contract, the AAA Rules, and the MA Rules (collectively the Contract).

**22.** To illustrate, the User Contract has a mandatory arbitration clause in Appendix 5, which is attached to this Ruling. (Appendix 5 or App. 5).

**23.**     Appendix 5 states the "arbitration will be administered by the American Arbitration Association ('AAA'), in accordance with the Consumer Arbitration Rules (the 'AAA Rules') then in effect, except as modified by this section [1.4] of this Arbitration Agreement." (App. 5, § 1.4).

**24.**     In turn, AAA Rule 1 makes the AAA Rules essential terms of Appendix 5 which means the AAA Rules are part of the User Agreement.

**25.**     Per AAA Rule 1, the Rules are essential terms of the Contract, i.e., the AAA Rules govern if there are any inconsistencies between them and Appendix 5.

**26.**     The parties agreed that the MA Rules applied to this proceeding and are essential terms of the Contract. (SAP ¶ 3). Per MA Rule 1, where inconsistencies exist among the MA Rules and other AAA-ICDR rules, the MA Rules govern.

**27.**     Because the AAA Rules govern if any inconsistencies exist between the AAA Rules and Appendix 5, because the MA Rules govern where any inconsistencies exist between the MA Rules and the AAA Rules, and because the MA Rules are essential terms of the Contract, then the MA Rules govern where any inconsistencies exist between the MA Rules and Appendix 5 or among the MA Rules, the AAA Rules, and Appendix 5.

**Jurisdiction**

**28.**     As described in paragraph 37, the Claimants urged the Batch Arbitration provisions (App. 5 ¶ 1.8) were unenforceable and should be severed. Per the Respondent, the Process Arbitrator's jurisdiction does not include ruling on the enforceability of the Batch Arbitration provisions.

**29.**     The Respondent misread the Contract and did not apply general principles of contract interpretation.

**30.**     To illustrate, the Contract states

[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or *application* of the Arbitration Agreement, *including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement.*

(App. 5 § 1.5) (emphasis added).

**31.**     The Contract also states that to

the extent the parties disagree on the *application* of the Batch Arbitration process, the disagreeing party shall advise the AAA, and the AAA shall appoint a sole standing arbitrator to determine the *applicability* of the Batch Arbitration process ('**Administrative Arbitrator**').

(App. 5 ¶ 1.8) (bolding in original; italics added).

**32.** Reading the Contract as a whole, including Appendix 5, paragraphs 1.5 and 1.8, giving effect to all provisions, giving the words their plain, grammatical, and customary meaning, and construing them from a utilitarian standpoint, the use of "application" in Appendix 5 paragraph 1.5 and the use of "application" and "applicability" in Appendix 5 paragraph 1.8, means the Process Arbitrator has jurisdiction to determine "the enforceability, revocability, scope, or validity" of that paragraph.

**33.** Alternatively, AAA Rule 53 states the "arbitrator shall interpret and apply these [AAA] Rules as they relate to the arbitrator's powers and duties." AAA Rule 1 makes the AAA Rules essential terms of the Contract, i.e., they govern if there are any inconsistencies between them and Appendix 5. Thus, based on the application of general principles of contract interpretation, AAA Rule 53 and Appendix 5 paragraph 1.5 mean the Arbitrator has jurisdiction to interpret and apply Appendix 5, e.g., determine "the enforceability, revocability, scope, or validity" of Appendix 5 paragraph 1.8—Batch Arbitration.

**34.** Similarly, contrary to the Respondent's assertion that the Process Arbitrator does not have authority under the MA Rules to determine "the enforceability, revocability, scope, or validity" of Appendix 5 paragraph 1.8—Batch Arbitration—he does.

**35.** For example, MA-6(c) states the "Process Arbitrator shall have the authority to determine the following issues: *** xi. Any other non-merits issues affecting case administration arising out of the nature of the mass arbitration that the Process Arbitrator determines is appropriate for determination and ***"

**36.** Determining "the enforceability, revocability, scope, or validity" of Appendix 5 paragraph 1.8—the Batch Arbitration paragraph—is generally a non-merits issue affecting case administration.

### Issue Presented by the Claimants

### Batch Arbitration

**37.** The Claimants asked the Process Arbitrator to address

the enforceability and applicability of the "Batch Arbitration" provision contained in Appendix 5, Section 1.8 of the Coinbase User Agreement, hold that it is unenforceable, and instead administer this Mass Arbitration pursuant to the terms of Rule MA-7(c), which guarantees that Merits Arbitrators will "decide each case on its own merits."

(SAP ¶ 6).

**38.** The Claimant asserted the Batch Arbitration provision was unconscionable and should be severed. It then requested the Process Arbitrator to rule that the MA Rules governed. As discussed above, the Respondent argued the Process Arbitrator

did not have jurisdiction to decide the issue. Alternatively, it argued that it was not unconscionable. Having found jurisdiction existed, this Ruling addressed unconscionability.

**39.     Unconscionability**. As discussed in paragraphs 21-27, the AAA Rules and the MA Rules are part of the Contract, and the AAA Rules govern if there are any inconsistencies between them and Appendix 5, the MA Rules govern where any inconsistencies between the AAA Rules and MA Rules, and the MA Rules govern where any inconsistencies exist between the MA Rules and Appendix 5.

**40.**     Applying general principles of contract interpretation, including reading the Contract as a whole, giving effect to all provisions, giving the words their plain, grammatical, and customary meaning, and construing them from a utilitarian standpoint, the Process Arbitrator found that the Batch Arbitration provisions are conscionable and enforceable whether applying the FAA, California law, or Illinois law.

**41.**     To illustrate, the AAA Rules and the MA Rules, which are part of the Contract, address any alleged infirmities in the Batch Arbitration.

**42.     Due Process.** For example, the Claimants asserted that the Batch Arbitration provisions violate the Due Process Protocols and due process. *Cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, (1991). (claimants are to be afforded the opportunity to effectively vindicate their statutory claims in the arbitral forum).

**43.**     However, AAA Rule 23 grants the Merits Arbitrators the authority to "issue any orders necessary to enforce the provisions of Rules R-21 and R-22 and to otherwise achieve a *fair*, efficient, and economical resolution of the case." (emphasis added).

**44.**     Also, per Rule 1, the Merits Arbitrators apply the AAA Rules when they conflict with the Contract. Further, the Merits Arbitrators will sign an oath that commits them to act consistent with the AAA Rules, the Code of Ethics for Arbitrators in Commercial Disputes, the parties' agreement, and applicable law to endeavor to effectively manage all phases of this case with a commitment to speed, economy and *just* resolution in a manner consistent with the parties' expectations, e.g., individual arbitration. Thus, the Merits Arbitrators commit to following the Due Process Protocols and due process.

**45.**     As discussed in paragraph 68, when the Batch Arbitration provisions conflict with the Due Process Protocol or the AAA Rules or both, the Merits Arbitrator has the authority per AAA Rule 23 to use procedures to achieve a fair, efficient, and economical resolution of the case.

**46.**     The Process Arbitrator noted that the Claimants agreed to "batching" consistent with the Due Process Protocol and the AAA Rules (Cl. Sept. 09, 2024 Brief at 13-14). The Process Arbitrator's interpretation of the Contract, which includes the

AAA Rules and the MA Rules, does exactly that—the Merits Arbitrators may select procedures for their batch that cause their proceedings to comply with the Due Process Protocol, due process, and the AAA Rules.

47.     Thus, under the Batch Arbitration provisions and the incorporated AAA Rules and MA Rules, the AAA may assign 100 cases to one Merits Arbitrator who decides them individually.

48.     **Fairness**. The Claimants also urged that individual Claimants would not be able to fairly present their individual evidence. Again, the Process Arbitrator expects the Merits Arbitrators to comply with their oaths and to apply AAA Rule 32(a) to give each party a fair opportunity to present its case.

49.     For example, a Merits Arbitrator may hold a hearing session to accept evidence common to all 100 assigned Claimants, then hold subgroup hearing sessions to accept evidence common to a smaller group, and later hold an individual hearing session to accept evidence relevant only to one Claimant. To comply with the Batch Arbitration provision calling for one hearing and AAA Rule 30 and 32, the Merits Arbitrator may elect to allow all Claimants to attend all hearing sessions.

50.     Even in the absence of the Batch Arbitration provision, such a procedure would be available under the AAA Rules, e.g., AAA Rule 32, and the MA Rules for 100 cases assigned to one Merits Arbitrator.

51.     These examples of how to conduct a fair hearing are just that—an example—and are not binding on any Merits Arbitrator who may identify other means to conduct one fair hearing per the Batch Arbitration provision as applied through the lens of the AAA Rules, the MA Rules, and the Due Process Protocol.

52.     **One Hearing and One Award.** The Claimants urged that the Batch Arbitration provision for one hearing and one award was problematic. The Claimants argued the resolution of the batch would have to be completed in full before the Merits Arbitrator could issue the single, consolidated award and would likely violate Due Process Principle 8 of reasonable time limits.

53.     Again, the AAA Rules provide the Merits Arbitrator with the authority to address such problems, e.g., AAA Rule 37, Interim Measures.

54.     For example, the Merits Arbitrator could dispose of multiple individual claims based on a common fact, e.g., the Respondent did not violate the BIPA as to those Claimants and issue an Interim Award denying those Claimants' claims. Those Claimants could then ask the Merits Arbitrator to sever their claims and issue a Final Award to appeal the decision to a court. In turn, as part of this example, the Merits Arbitrator could interpret the Contract as allowing such severance as the Batch Arbitration process is silent on severance and severance is consistent with Rule 23— a fair, efficient, and economical resolution of the case.

**55.** In this example, if the Merits Arbitrator decided not to sever, the Claimants may argue to a court that the Interim Award, as to them, is a final award subject to appeal under the FAA. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, (2019).

**56.** As another example, if an individual claim is less than $25,000.00, the Merits Arbitrator may elect to proceed under AAA Rule 1 and Rule 29 with a documents-only/desk arbitration.

**57.** As still another example, the Merits Arbitrator could elect to use the procedure described in paragraph 49 as a solution.

**58.** **County of Residence.** The Claimants urged that the Batch Arbitration provision deprives individuals of an arbitration hearing in their county of residence. But, AAA Rule 32 grants Merits Arbitrators the option to hold hearings using video, e.g., web conferencing or Internet communication.

**59.** Alternatively, the AAA may batch Claimants by location, allowing the Merits Arbitrator to hold hearing sessions for all Claimants in one county and then other counties until all Claimants in that batch have had a hearing in their county. Also, as described in paragraph 54, the Merits Arbitrator could issue Interim Awards by county per AAA Rule 37.

**60.** **Confirmation and Vacatur.** The Claimant asserted it was not clear how a prevailing Claimant moved to confirm an Award while a losing Claimant moved to vacate the same Award. Just like an individual that prevails on some claims and loses others in a bench trial, a prevailing Claimant could move to confirm that portion of an Award that granted that individual relief, and a losing Claimant could move to vacate that portion of an award that denied that individual relief. *See Greaney v. Indus. Commn.*, 832 N.E.2d 331, 354 (Ill. App. 1st Dist. 2005); *Collimore v. Liberty Mut. Ins. Co.*, No. CV90 0270844 S, 1992 WL 310604, at *1 (Conn. Super. Oct. 9, 1992) (claimant filed an application to modify and/or vacate in part the arbitration award and the court vacated the award in part).

**61.** **Sufficient Arbitrators.** The Claimants raise the specter that the AAA's arbitration panel does not have over 100 Arbitrators who are either a retired judge or licensed California attorneys to conduct hearings in Illinois.

**62.** First, the Process Arbitrator noted the parties modified the Contract as to the Process Arbitrator who is not licensed in California and is handling the presented issues via a preliminary hearing held by telephone and documents provided to him at his Dallas, Texas office.

**63.** Second, the Merits Arbitrators could travel to the county of residence.

**64.** Third, AAA Rules allow the Merits Arbitrator to conduct documents-only proceedings or to conduct hearing sessions remotely.

**65.**  Fourth, based on the Court opinion and submissions in a case cited by the Claimants, in 2022, the AAA stated it had 750 available Arbitrators for arbitration demands under the Consumer Rules. *Uber Techs., Inc. v. Am. Arb. Assn., Inc.*, 167 N.Y.S.3d 66, 68 (N.Y. App. Div. 1st Dept. 2022) and *Uber Techs., Inc. v. Am. Arb. Assn., Inc.*, Brief for Plaintiffs-Appellants, (Jan. 3, 2022), New York County Clerk's Index No. 655549/21, 2022 WL 1125962, at *11.

**66.**  Fifth, this argument assumes one batch is assigned to one Merits Arbitrator.

**67.  Same Attorney.** The Claimants argued the Batch Arbitration provision penalizes the Claimants because they must proceed in one batch because they selected the same attorney and "kneecaps Claimants' opportunity for a meaningful hearing." That argument is based on the premise that such a proceeding violates due process, a premise rebutted above.

**68.**  As discussed in paragraphs 21-27, the AAA Rules are part of the Contract and whenever a conflict exists between the AAA Rules and the Batch Arbitration provision, the Merits Arbitrator, per AAA Rule 23 and the Arbitrator's oath provides methods to achieve a *fair*, efficient, and economical resolution of the case.

**69.  Concurrent Batches.** The Claimants observed the Batch Arbitration did not state whether the batches would occur concurrently or serially. They then argue even concurrent batches would likely be slow and cumbersome. As discussed in paragraphs 21-27, 42-57, and 64, the Merits Arbitrators have the authority to use procedures to address these concerns per AAA Rule 23, which is an essential part of the Contract.

**70.**  As to all examples above, they are just that—examples—and are not binding on any Merits Arbitrator who may identify other means to conduct a fair, efficient, prompt, and economical hearing compliant with the Due Process Protocol and the Contract which includes the AAA Rules and the MA Rules.

### Issues Presented by Respondent

**71.**  The Respondent asked the Process Arbitrator:

**Issue 1.**  To administratively close all of the arbitrations in accordance with Section 1.4 of the arbitration clause in the User Agreement and Consumer Rule R-9(b) so that the matters may proceed in Small Claims Court.

**Issue 2.**  To determine that the Claimants' Counsel failed to comply with their obligation under Supplementary Rule MA-2 to determine "that the information provided for each individual case is true and correct to the best of [their] knowledge" and requiring that [the Claimants' Counsel] submit amended affirmations certifying that (1) the information submitted for each individual claimant is true and correct; and (2) [the Claimants' Counsel] have investigated the deficiencies in their Claimant pool and certify that the deficiencies have been remedied;

**Issue 3.**  To require sworn declarations from each Claimant confirming that

they are aware of and have authorized these arbitrations, they are a Coinbase User who participated in the IDV Process while in the State of Illinois and took a selfie as part of that process, and they have not previously released their claims against Coinbase;

**Issue 4.** To determine that Claimants have not met the pre-arbitration requirements under [the Respondent's] User Agreement and requiring that Claimants satisfy those requirements before proceeding with their claims;

**Issue 5.** To require that Claimants submit amended Demands providing basic information underlying their claim including (a) the date that each Claimant purportedly uploaded a selfie to verify their identity during the IDV Process; (b) where the Claimant was located when they purportedly uploaded a selfie using the IDV Process; (c) each Claimant's Coinbase Support case number; and (d) an individualized calculation of each Claimant's alleged damages; and

**Issue 6.** To the extent that any arbitrations go forward, directing procedures to implement the User Agreement's "Batch Arbitration" process for these arbitrations, including that (a) the Merits Arbitrator for each batch should be selected through a strike-and-rank process; (b) within 30 days of the appointment of a Merits Arbitrator for a batch, Coinbase will submit its answer to the arbitration demands included in that batch; and (c) before the parties engage in any exchange of information under Consumer Arbitration Rule R-22, each Merits Arbitrator assigned to a batch shall hear and rule on Coinbase's dispositive motion that BIPA does not apply because Coinbase falls squarely within the statute's financial institution exemption.

**72.** These issues are addressed below.

**Issue 1 Small Claims Court**

**73.** The parties agreed that Illinois Small Claims Courts' jurisdiction is limited to $10,000.00.

**74.** The Process Arbitrator finds that to elect to proceed in Small Claims Court, a party must show that Court has jurisdiction.

**75.** The Respondent argued that even if a Claimant could seek damages under multiple provisions of the statute for the same alleged violation, each Claimant's recovery would be limited to $3,000.00 based on the statutory damages of $1,000.00 for each "negligent" violation of each cited BIPA violation for a total of $9,000.00. Per the Respondent, a Claimant has no basis to allege the BIPA violations were intentional or reckless.

**76.** Each Claimant alleged the Respondent intentionally or recklessly violated BIPA and sought statutory damages of at least $15,000.00, as well as compensatory damages, punitive damages, and restitution.

77.    The Process Arbitrator agreed with the Claimants that decisions about the merits of the BIPA claims are not for him. It is for the Merits Arbitrators to determine the merits of each claim, e.g., whether the Respondent is a financial institution exempt from BIPA, whether the third-party vendor is an agent for which the Respondent is liable, and whether the Respondent intentionally or recklessly violated each of three BIPA provisions. Moreover, these issues may vary from Claimant to Claimant, e.g., the Respondent may not have been a financial institution on one date and was a financial institution on another.

78.    Based on this record, the Process Arbitrator declined to administratively close each case. Based on the pled damages, the Process Arbitrator did not find it necessary to address the Respondent's remaining arguments raised by it about administrative closure.

### Issue 2 Pre-Claim Investigation

79.    The Respondent asserted that the Claimants' Counsel did not reasonably determine "that the information provided for each individual case is true and correct to the best of [their] knowledge."

80.    It asked the Process Arbitrator to require Claimants' Counsel to submit amended affirmations by Claimants Counsel certifying that (1) the information submitted for each individual Claimant is true and correct; and (2) Claimants' Counsel has investigated the deficiencies in their Claimant pool and certify that the deficiencies have been remedied.

81.    The Claimants apparently no longer contend that the Process Arbitrator does not have jurisdiction to resolve this issue. (Cl. Oct. 14, 2024 Responsive Brief at 11-12).

82.    The Respondent admitted that the Claimants' Counsel submitted affirmations—one with each mass arbitration submission—that comport with MA Rule 2. (RX22 and RX23).

83.    The Respondent urged it adduced evidence of serious deficiencies within the Claimant pool and itemized various categories of those deficiencies.

84.    The Respondent asserted that its sampling of Demands revealed.

- deceased Claimants;

- Claimants who were never Coinbase Users;

- Claimants who never participated in the IDV Process;

- Claimants who did not upload a selfie as part of the IDV Process;

- Claimants who do not have a history of residency in Illinois in the past five years, which is required to bring a BIPA claim;

- Claimants who submitted duplicate Demands;

- Claimants who previously released all claims against Coinbase; and
- Claimants in active bankruptcy.

**85.** The Respondent then only identified an insignificant number of Claimants.

**86.** Based on this record, the Process Arbitrator declined to order the requested relief.

**87.** To illustrate, over time, the number of Claimants was reduced from over 20,000 to over 10,400, indicating Claimants' Counsel investigated claims and removed individuals without meritorious claims.

**88.** Further, the Respondent did not describe the scope of or method of its sampling analysis so that the Process Arbitrator could evaluate its reliability, validity, or accuracy, e.g., its margin of error. Also, the Respondent did not quantify the results of its sampling analysis, e.g., the percentage or number of Claimants within each category so that the Process Arbitrator could evaluate the extent and relevance of the alleged problem and the appropriate remedy.

**89.** Moreover, the Respondent did not cite any authority that such claims ended with the death of the Claimant.

**90.** The Respondent may identify to the Claimants' Counsel those individuals that the Respondent asserts are not properly part of the pool based on the categories in paragraph 84, along with the basis for that assertion. The Process Arbitrator would expect the Claimants Counsel to voluntarily withdraw those individuals for whom it confirms the Respondent's assertion is accurate. As noted in paragraph 87, the Claimants were reduced from over 20,000 to just over 10,400.

## Issue 3 Claimants' Declaration

**91.** The Respondent asked the Process Arbitrator to require each Claimant to submit a declaration affirming the Claimant (i) is aware of this arbitration, has authorized Claimants' Counsel to represent them in this arbitration, and has reviewed and authorized the submission of the Demand; (ii) is a Coinbase User who participated in the IDV Process while in the State of Illinois and took a selfie as part of that process; and (iii) has not previously released their claims against Coinbase.

**92.** The Claimants contend the Process Arbitrator lacked jurisdiction to do so.

**93.** The Process Arbitrator found that he has jurisdiction per the MA Rules and the Contract. For example, the Process Arbitrator can interpret the Contract and can determine that an issue is for the Merits Arbitrators and not the Process Arbitrator.

**94.** The Process Arbitrator declined to grant the Respondent's request.

**95.** To illustrate, as to item (i), the Contract, including the AAA Rules, does not require a Claimant to submit such a declaration, and based on this record, the Respondent has not shown that such relief is warranted. If the Respondent believes

that Claimants' Counsel has acted improperly, it has other forums to pursue such beliefs as stated in its letter dated March 1, 2024. (RX12).

**96.**     As to item (ii), the Claimants have adequately alleged those facts in their Demands, and the Contract does not require more. Further, based on this record, proof of those allegations is an evidentiary matter related to the merits and is an issue for the Merits Arbitrators.

**97.**     As to item (iii), that too is not required by the Contract and appeared to be an evidentiary matter related to the merits and an issue for the Merits Arbitrators.

**Issue 4 Pre-Arbitration Requirements**

**98.**     The Respondent asked the Process Arbitrator to find that the Claimants have not met the Contract's pre-arbitration requirements and require that the Claimants satisfy those requirements before proceeding with their claims.

**99.**     While the Claimants initially contended that the Process Arbitrator did not have jurisdiction to decide this issue, the Claimants then wrote in their submissions that now they did not so contend. (Cl. Oct. 14, 2024 Responsive Br. at 16).

**100.**    Per the Contract,

> **7.2. Formal Complaint Process.** If you have a complaint with Coinbase, you agree to first contact Coinbase through our support team to attempt to resolve any such dispute amicably. **If we cannot resolve the dispute through Coinbase Support, you agree to use the Formal Complaint Process set forth below before filing any arbitration claim or small claims action as described further in Appendix 5 below.** You must complete the Formal Complaint Process before filing any arbitration or small claims action. If you do not complete it, then you agree that your claim or action must be dismissed from arbitration or small claims court.

> **7.2.1. Procedural Steps.** In the event that the dispute is not resolved through your contact with Coinbase Support, you agree to use our complaint form to describe your dispute, how you would like us to resolve the complaint, and any other relevant information. The complaint form can be found here or can be requested from Coinbase Customer Support. If you prefer to send a written complaint via mail, please include as much information as possible in describing your complaint and how you would like us to resolve the complaint, including your support case number and any other relevant information to Coinbase, Inc., 1350 Ave of the Americas, Fl 2 #1143, New York, NY 10019. We will acknowledge receipt of your complaint form after you submit it. A Coinbase customer relations agent will review and evaluate your complaint based on the information you have provided and information in the possession of Coinbase. The Formal Complaint Process is completed when Coinbase

responds to your complaint or forty-five (45) business days after the date we receive your complaint, whichever occurs first.

(Contract) (bolding in original).

**101.** Per the Claimants, the Respondent waived enforcing these requirements, the Formal Complaint Process is unenforceable, and the Claimants have satisfied it.

**102.** Based on this record and applying applicable law, the Process Arbitrator finds that the Respondent has waived some of these requirements based on its conduct and the Claimants have satisfied others, thus substantially complying with these Contract provisions.

**103.** To illustrate, the Claimants' Counsel sent a written complaint to the Respondent. The complaint detailed the Claimants' theories and listed each Claimant individually. Through their respective Counsel, the Claimants and the Respondent communicated from August 2023 through March 2024 about the disputes and their merits. In January 2024, the parties participated in a mediation.

**104.** Alternatively, the Process Arbitrator found that the Claimants' compliance with these Contract provisions would have been futile. Consistently since at least August 23, 2023 through March 2024, the Respondent has asserted that BIPA does not apply to it. (RX11, dated March 1, 2024, "On August 18, 2023, we had a teleconference with your partner Melissa Nafash, and explained why BIPA does not apply to Coinbase ***"). Thus, if the Claimants had contacted Coinbase Support and filed a complaint form asserting BIPA violations, the Respondent would have denied the claim. Indeed, based on this record, the Respondent has denied each Claimant's claim, e.g., the Respondent is not subject to the BIPA.

### Issue 5 Amended Demands

**105.** The Respondent asked the Process Arbitrator to require each Claimant to submit amended Demands providing (a) the date that each Claimant purportedly uploaded a selfie to verify their identity during the IDV Process; (b) where the Claimant was located when they purportedly uploaded a selfie using the IDV Process; (c) each Claimant's Coinbase Support case number; and (d) an individualized calculation of each Claimant's alleged damages.

**106.** While the Claimants initially contended that the Process Arbitrator did not have jurisdiction to decide this issue, the Claimants then wrote in their submissions that now they did not so contend. (Cl. Oct. 14, 2024 Responsive Br. at 21).

**107.** Per the Contract, which includes the AAA Rules, a Claimant must "[b]riefly explain the dispute" and "[s]pecify the amount of money in dispute, if applicable." (AAA Rule 2(a)(1)). Per Appendix 5, the Demand must include "a statement of the legal claims being asserted and the factual bases of those claims" and "a description of the remedy sought, including an accurate, good faith calculation of the amount in controversy in [USD]." (App. 5 § 1.4).

108.    The Respondent asserted the Demands repeated baseless, generic assertions that Coinbase has violated BIPA while failing to provide the basic information required by AAA Rule 2 and Appendix 5.

109.    Per the Respondent, the uniform allegations that "Claimant is a Coinbase user and has uploaded a photo of their government ID and a selfie to the Coinbase Platform to verify their identity" (RX1 ¶ 75) are false for those Claimants who never had a Coinbase account, who did not go through the IDV Process, or who did not provide a selfie.

110.    Per the Respondent, the Claimants also did not provide an accurate, good faith calculation of their alleged damages for their claim under the Consumer Fraud and Deceptive Business Practices Act, instead seeking "compensatory damages, punitive damages, and restitution" (RX1 at 39) without providing any calculation of the damages suffered by any individual Claimant.

111.    Based on this record, the Process Arbitrator declined to require the Claimants to file amended Demands. To illustrate, the relevance or falsity of any allegations is an issue for the Merits Arbitrators. For example, the issue of the application of the BIPA to an Illinois resident who uploaded a selfie while in another state is one for the Merits Arbitrators.

112.    Also, items (a), (b), (c), and (d) appear to be requests for the global exchange of information, an issue beyond the scope of the issues submitted to date to this Process Arbitrator and to the extent they are directed to individual Claimants, an issue for the Merits Arbitrators.

113.    Alternatively, as to item (d), the Process Arbitrator found that the Claimants' allegation of damages of $15,000.00 for statutory violations and actual damages, punitive damages, and restitution is sufficient and substantial compliance at this stage of the proceedings. *Cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-32 (1991) (in arbitration, the parties trade the procedures and opportunity for review of the courtroom "for the simplicity, informality, and expedition of arbitration").

## Issue 6 Batch Arbitration

114.    The Respondent requested that if any of these arbitrations proceed, the Process Arbitrator direct that the following procedures apply:

(a) Merits Arbitrators for each batch should be selected through a strike-and-rank process;

(b) Within 30 days of the appointment of a Merits Arbitrator for a batch, the Respondent will submit its answer to the arbitration demands included in that batch; and

(c) As a threshold matter—and before the parties engage in any exchange of information under AAA Rule 22—each Merits Arbitrator assigned to a batch shall hear and rule on the Respondent's dispositive motion contending that the BIPA claim is not viable because the Respondent is exempt.

**115.** As to item (a), AAA Rule 16, which is part of the Contract, governs. To illustrate, if the parties do not agree on an appointment process, then the AAA administratively appoints one.

**116.** As to item (b), the Process Arbitrator found that the schedule for a specific batch is best addressed by the Merits Arbitrators per AAA Rules, e.g., Rule 21.

**117.** As to item (c), the Process Arbitrator found the sequence of information exchange and the timing of the filing of any motions is best addressed by the Merits Arbitrators per AAA Rules, e.g., Rules 21, 22, 23, 24, 26, 29, 32, 33, 34, or 37.

**118.** To illustrate, if claims are batched based on sub issues, e.g., all deceased Claimants are in one batch, the Merits Arbitrator may decide to schedule briefing first on whether such claims may proceed rather than the issue of the application of BIPA.

## Issues Not Addressed

**119.** This Ruling does not address

(1) the merits of any claim;

(2) the manner in which the AAA administrative fee has been or will be charged;

(3) the manner in which claims are batched; or

(4) the assignment of more than one batch to one Merits Arbitrator.

**120.** This Ruling shall continue in effect until amended by a later ruling of the Process Arbitrator.

_____December 31, 2024_____

Date

William E. Hartsfield, Process Arbitrator

complete, accurate or correct and, accordingly, we do not represent or warrant or guarantee that a Coinbase Attestation is complete, accurate or correct.

## APPENDIX 5: ARBITRATION AGREEMENT

**1.1. Applicability of Arbitration Agreement.** Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a "**Dispute**") will be resolved by binding arbitration, rather than in court, except that: (1) you and Coinbase may assert claims or seek relief in small claims court if such claims qualify and remain in small claims court; and (2) you or Coinbase may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents). For purposes of this Arbitration Agreement, "Dispute" will also include disputes that arose or involve facts occurring before the existence of this or any prior versions of the User Agreement as well as claims that may arise after the termination of this User Agreement.

**1.2. Waiver of Jury Trial.  <u>YOU AND COINBASE HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY.</u> You and Coinbase are instead electing that all Disputes shall be resolved by arbitration under this Arbitration Agreement, except as specified in the subsection entitled "Applicability of Arbitration Agreement" above. There is no judge or jury in arbitration, and court review of an arbitration award is subject to very limited review.**

**1.3. Waiver of Class and Other Non-Individualized Relief. YOU AND COINBASE AGREE THAT, EXCEPT AS SPECIFIED IN SUBSECTION 1.8, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS, AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MASS ACTION BASIS. ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND DISPUTES OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.** Subject to this Arbitration Agreement, the arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by the party's individual claim. Nothing in this paragraph is intended to, nor shall it, affect the terms and conditions under the subsection 1.8 entitled "Batch Arbitration." Notwithstanding anything to the contrary in this Arbitration Agreement, if a court decides by means of a final decision, not subject to any further appeal or recourse, that the limitations of this subsection, "Waiver of Class and Other Non-Individualized Relief," are invalid or unenforceable as to a particular claim or request for relief (such as a request for public injunctive relief), you and Coinbase agree that that particular claim or request for relief (and only that particular claim or request for relief) shall be severed from the arbitration and may be litigated in the state or federal courts located in the State of California. All other

Disputes shall be arbitrated or litigated in small claims court. This subsection does not prevent you or Coinbase from participating in a class-wide settlement of claims.

**1.4. Rules and Forum.** The User Agreement evidences a transaction involving interstate commerce; and notwithstanding any other provision herein with respect to the applicable substantive law, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, will govern the interpretation and enforcement of this Arbitration Agreement and any arbitration proceedings. If the Formal Complaint Process described in Section 7.2 above does not resolve satisfactorily within forty-five (45) business days after receipt of your complaint form, you and Coinbase agree that either party shall have the right to finally resolve the Dispute through binding arbitration. The arbitration will be administered by the American Arbitration Association ("AAA"), in accordance with the Consumer Arbitration Rules (the "AAA Rules") then in effect, except as modified by this section of this Arbitration Agreement. The AAA Rules are currently available at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.

A party who wishes to initiate arbitration must provide the other party with a request for arbitration (the "**Request**"). If you initiate the arbitration, you must provide Coinbase a copy of your Request by email at arbitration@coinbase.com or through Coinbase's registered agent for service of process. The Request must include: (1) the name, telephone number, mailing address, email address of the party seeking arbitration, and the email addresses associated with the applicable Coinbase Account(s); (2) a statement of the legal claims being asserted and the factual bases of those claims; (3) a description of the remedy sought, including an accurate, good faith calculation of the amount in controversy in United States Dollars; (4) a statement certifying completion of the Formal Complaint Process as described above in Section 7.2 (if you are the party making the Request); and (5) evidence that the requesting party has paid any necessary filing fees in connection with such arbitration.

If the party requesting arbitration is represented by counsel, the Request shall also include counsel's name, telephone number, mailing address, and email address. Such counsel must also sign the Request. By signing the Request, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that: (1) the Request is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual and damages contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Unless you and Coinbase otherwise agree, or the Batch Arbitration process discussed in subsection 1.8 is triggered, the arbitration will be conducted in the county where you reside. Disputes involving claims, counterclaims, or requests for relief under $25,000, not inclusive of attorneys' fees and interest, will be conducted solely on the basis of documents you and Coinbase submit to the arbitrator. If your claim exceeds $25,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the arbitrator may direct a limited and reasonable exchange of information between the parties, consistent with the expedited nature of the arbitration. If the AAA is not available to arbitrate, the parties will select an alternative arbitral forum. Your responsibility to pay any AAA fees and costs will be solely as set forth in the applicable AAA Rules.

You and Coinbase agree that all materials and documents exchanged during the arbitration proceedings shall be kept confidential and shall not be shared with anyone except the parties'

attorneys, accountants, or business advisors, and then subject to the condition that they agree to keep all materials and documents exchanged during the arbitration proceedings confidential.

**1.5. Arbitrator.** The arbitrator will be either a retired judge or an attorney licensed to practice law in the state of California and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an arbitrator within thirty-five (35) business days of delivery of the Request, then the AAA will appoint the arbitrator in accordance with the AAA Rules, provided that if the Batch Arbitration process under subsection 1.8 is triggered, the AAA will appoint the arbitrator for each batch.

**1.6. Authority of Arbitrator.** The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement, except for the following: (1) all Disputes arising out of or relating to the Section entitled "Waiver of Class and Other Non-Individualized Relief," including any claim that all or part of the Section entitled "Waiver of Class and Other Non-Individualized Relief" is unenforceable, illegal, void or voidable, or that such Section entitled "Waiver of Class and Other Non-Individualized Relief" has been breached, shall be decided by a court of competent jurisdiction and not by an arbitrator; (2) except as expressly contemplated in the subsection entitled "Batch Arbitration," all Disputes about the payment of arbitration fees shall be decided only by a court of competent jurisdiction and not by an arbitrator; (3) all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator; and (4) all Disputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator. The arbitration proceeding will not be consolidated with any other matters or joined with any other cases or parties, except as expressly provided in the subsection entitled "Batch Arbitration." The arbitrator shall have the authority to grant motions dispositive of all or part of any Dispute. The arbitrator shall issue a written award and statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded. The award of the arbitrator is final and binding upon you and us. This means that, among other things, you and we agree that an arbitral award shall have no preclusive effect in any other proceeding involving other parties. Judgment on the arbitration award may be entered in any court having jurisdiction. In any award of damages, the arbitrator shall abide by the "Limitation of Liability" section of this User Agreement.

**1.7. Attorneys' Fees and Costs.** The parties shall bear their own attorneys' fees and costs in arbitration unless the arbitrator finds that either the substance of the Dispute or the relief sought in the Request was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)). If you or Coinbase need to invoke the authority of a court of competent jurisdiction to compel arbitration, then the party that obtains an order compelling arbitration in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration. The prevailing party in any court action relating to whether either party has satisfied any condition precedent to arbitration, including the Formal Complaint Process, is entitled to recover their reasonable costs, necessary disbursements, and reasonable attorneys' fees and costs.

**1.8. Batch Arbitration.** To increase the efficiency of administration and resolution of arbitrations, you and Coinbase agree that in the event that there are one hundred (100) or more

individual Requests of a substantially similar nature filed against Coinbase by or with the assistance of the same law firm, group of law firms, or organizations, within a thirty (30) day period (or as soon as possible thereafter), the AAA shall (1) administer the arbitration demands in batches of 100 Requests per batch (plus, to the extent there are less than 100 Requests left over after the batching described above, a final batch consisting of the remaining Requests); (2) appoint one arbitrator for each batch; and (3) provide for the resolution of each batch as a single consolidated arbitration with one set of filing and administrative fees due per side per batch, one procedural calendar, one hearing (if any) in a place to be determined by the arbitrator, and one final award ("**Batch Arbitration**").

All parties agree that Requests are of a "substantially similar nature" if they arise out of or relate to the same event or factual scenario and raise the same or similar legal issues and seek the same or similar relief. To the extent the parties disagree on the application of the Batch Arbitration process, the disagreeing party shall advise the AAA, and the AAA shall appoint a sole standing arbitrator to determine the applicability of the Batch Arbitration process ("**Administrative Arbitrator**"). In an effort to expedite resolution of any such dispute by the Administrative Arbitrator, the parties agree the Administrative Arbitrator may set forth such procedures as are necessary to resolve any disputes promptly. The Administrative Arbitrator's fees shall be paid by Coinbase.

You and Coinbase agree to cooperate in good faith with the AAA to implement the Batch Arbitration process including the payment of single filing and administrative fees for batches of Requests, as well as any steps to minimize the time and costs of arbitration, which may include: (1) the appointment of a discovery special master to assist the arbitrator in the resolution of discovery disputes; and (2) the adoption of an expedited calendar of the arbitration proceedings. This Batch Arbitration provision shall in no way be interpreted as authorizing a class, collective and/or mass arbitration or action of any kind, or arbitration involving joint or consolidated claims under any circumstances, except as expressly set forth in this provision.

**1.9. Modification.** Notwithstanding any provision in this User Agreement to the contrary, we agree that if Coinbase makes any future material change to this Arbitration Agreement, it will notify you. Your continued use of the Coinbase Site and/or Services, including the acceptance of products and services offered on the Coinbase Site following the posting of changes to this Arbitration Agreement constitutes your acceptance of any such changes.