# Exhibit W

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-3529
DIRECT FAX
(917) 777-3529
E-MAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

March 24, 2025

**VIA ELECTRONIC MAIL**

Heather Stout
Manager of ADR Services
American Arbitration Association
1301 Atwood Ave, Suite 211N
Johnston, RI 02919
heatherstout@adr.org

      RE: *Individual Claimants v. Coinbase, Inc.*, Case Number 01-24-0003-0061

Dear Ms. Stout:

  We write on behalf of Respondent Coinbase, Inc. ("Coinbase") in response to the AAA's March 3, 2025 (1) letter to the parties which states, in relevant part: "At this time, the AAA is assessing a Per Case Fee for each individual case, rather than for each batch of 100 individual cases," and (2) corresponding invoice. (Exs. A-B.)

  The AAA's determination and invoice violate the Arbitration Agreement in the Coinbase User Agreement. Accordingly, Coinbase hereby provides notice that it will not pay the invoice for Per Case Fees and respectfully requests that the AAA administer the arbitrations consistent with the parties' agreement or close these arbitrations.

  **1. The Batch Arbitration Process Requires Arbitration Administrative Fees To Be Assessed On A *Per Batch*—Not *Per Claimant*—Basis**

  The parties agree that the Coinbase User Agreement (last updated August 24, 2023) (Ex. C) applies to these arbitrations. (*See* Process Arbitrator Ruling No. 1, dated

Heather Stout, Manager of ADR Services
March 24, 2025
Page 2

August 14, 2024 (Ex. D), ¶ 2 ("The parties agreed that the Coinbase User Agreement, last updated on August 24, 2023, applies to the Claimants and the Respondent."); *see also* Process Arbitrator Ruling No. 2, dated December 31, 2024 ("Ruling No. 2," Ex. E) ¶ 13 (same).)

Section 1.8 of the Arbitration Agreement in the agreed-upon User Agreement contains a "Batch Arbitration" process that applies where "there are one hundred (100) or more individual Requests [for arbitration] of a substantially similar nature filed against Coinbase by or with the assistance of the same law firm, group of law firms, or organizations." (Ex. C at App'x. 5 § 1.8.) "To increase the efficiency of administration and resolution of arbitrations," the Batch Arbitration process requires the AAA to:

> 1. Administer the arbitration demands in batches of 100 Requests per batch;
>
> 2. Appoint one arbitrator for each batch; and
>
> 3. *Provide for the resolution of each batch as a single consolidated arbitration with one set of filing and administrative fees due per side per batch,* one procedural calendar, one hearing (if any) in a place to be determined by the arbitrator, and one final award.

(*Id.* (emphasis added).) When the Batch Arbitration process is triggered, like it is here, Claimants and Coinbase "agree to cooperate in good faith with the AAA to implement the Batch Arbitration process *including the payment of single filing and administrative fees for batches of Requests, as well as any steps to minimize the time and costs of arbitration.*" (*Id.* (emphases added).)

The purpose of the Batch Arbitration process—"[t]o increase the efficiency of administration and resolution" of mass arbitrations—is consistent with the AAA's Mass Arbitration Supplementary Rules ("Supplementary Rules"), which emphasize that "[p]arties are encouraged to agree to additional processes that make the resolution of their Mass Arbitration more efficient." (Supplementary Rules at 3, *Introduction*.)[1] By its express terms, and consistent with the AAA's own rules, the Batch Arbitration process requires all administrative fees be assessed on a per batch basis.

---

[1] The AAA has determined that the Consumer Arbitration Rules and the Supplementary Rules apply to this mass arbitration.

Heather Stout, Manager of ADR Services
March 24, 2025
Page 3

### 2. The Process Arbitrator Found The Batch Arbitration Process To Be "Conscionable And Enforceable"

The Batch Arbitration process in the Arbitration Agreement is designed to streamline administration of the arbitrations and reduce administrative costs for *both Coinbase and Claimants*. Recognizing this, the Process Arbitrator rejected Claimants' counsel Labaton Keller Sucharow's ("Labaton") challenge to the enforceability of the Batch Arbitration process, expressly finding that "the Batch Arbitration provisions are conscionable and enforceable." (Ruling No. 2 (Ex. E) ¶ 40.)[2]

Labaton mounted this failed challenge despite the fact that the demands for arbitration ("Demands") did *not* challenge the enforceability of the Arbitration Agreement's Batch Arbitration process and despite Claimants' contractual obligation "to cooperate in good faith with the AAA to implement the Batch Arbitration process." (User Agreement (Ex. C), App'x. 5 § 1.8.) As Coinbase explained in response to Labaton raising this issue, Labaton's challenge was not about whether the Batch Arbitration process was fair, which it is, but, instead, was a transparent attempt to obtain a ruling that Coinbase pay excessive arbitration fees so Labaton could leverage that threat to seek a windfall settlement. (Ex. F at 2.)

### 3. The AAA's Determination—At Labaton's Urging—To Assess Per Case Fees On A *Per Claimant* Basis Is Contrary to The Agreed-Upon Terms Of The Batch Arbitration Process And Unjustifiably Increases Costs For Both Sides

Following the Process Arbitrator's Ruling, the AAA conducted an administrative conference call with the parties on February 6, 2025, to discuss the next administrative steps. Notwithstanding the Process Arbitrator's ruling that the Batch Arbitration process was enforceable, Labaton continued to challenge the Batch Arbitration process's requirement that fees be assessed on a *per batch* basis. Coinbase thereafter wrote to the AAA, explaining again why fees must be assessed on a *per batch* basis in accordance with the parties' agreement. (*See* Ex. G.) In response, Labaton asserted that "Claimants object to one fee per batch to the extent that it violates any Claimant's due process right to an individual award." (Ex. H at 1.) In turn, Coinbase responded and explained that Labaton's position was not only contrary to the Batch Arbitration process and Claimants' contractual obligations, but was harmful to Labaton's own clients because Labaton's proposal would *increase* Claimants' fee obligations. (Ex. I at 2 (emphases in original).) Labaton maintained this absurd and contractually prohibited position. (*See* Ex. J.)

---

[2] The Process Arbitrator did not rule on the fee issue. (*See* Ex. E ¶ 119(2) ("This Ruling does not address . . . (2) the manner in which the AAA administrative fee has been or will be charged.").)

Heather Stout, Manager of ADR Services
March 24, 2025
Page 4

On March 3, 2025, the AAA confirmed that it would batch the cases "in groups of 100" with each batch before "a single Merits Arbitrator" —as set forth in the Batch Arbitration process. (Ex. A at 1.) Despite this, the AAA inexplicably refused to assess fees on a *per batch* basis in accordance with the express terms of that same Batch Arbitration process, instead stating that it was "assessing a Per Case Fee for each individual case." (*Id.* at 2.)

The AAA's disregard of the clear terms of the parties' Arbitration Agreement has resulted in it imposing a fee structure that increases the arbitration administrative costs for both Coinbase and Claimants by nearly a hundredfold. To demonstrate:

- The AAA invoiced Claimants a total of ***$808,625*** for Per Case Fees (assessed on a *per Claimant* basis). (*Id.* at 2.) Had the Per Case Fees been assessed on a *per batch* basis as contractually required, Claimants' total invoice ***would have been only $10,000***.[3]

- The AAA invoiced Coinbase a total of ***$1,415,875*** for Per Case Fees (likewise assessed on a *per Claimant* basis). (*Id.*) Had the Per Case Fees been assessed on a *per batch* basis as contractually required, Coinbase's total invoice ***would have been only $26,000***.[4]

Thus, Labaton's continued attempts to flaunt the Batch Arbitration process have: (1) tortiously interfered with Coinbase's contractual rights by causing Claimants to breach their good faith obligations to "implement the Batch Process including the payment of single filing and administrative fees for batches of Requests" (Ex. C at App'x. 5 § 1.8);[5] and (2) been against Claimants' interests because the assessment of Per Case Fees on a *per Claimant* basis has significantly increased the costs for the Claimants.

---

[3]  This figure was calculated by using a single Per Case Fee of $125 under the AAA's fee schedule for each of the 105 batches (the total number of batches required to batch all 10,490 Claimants into batches of 100 Claimants per batch), totaling $13,125, minus Claimants' Initiation Fee of $3,125 which the AAA deducts from the Per Case Fees.

[4]  This figure was calculated by using a single Per Case Fee of $325 under the AAA's fee schedule for each of the 105 batches, totaling $34,125, minus Coinbase's Initiation Fee of $8,125 which the AAA deducts from the Per Case Fees.

[5]  *See, e.g.*, Ord. Denying Def.'s Mot. to Dismiss or for Summ. Judgment at 2, *Valve Corp. v. Bucher L. PLLC*, No. 23-2-20447-6 SEA (Wash. Super. Ct. filed Mar. 15, 2024), ECF No. 29 (denying defendant law firm's motion to dismiss and holding that "[plaintiff business] has alleged sufficient facts to establish a plausible claim of tortious interference" against the law firm for causing its clients to breach an arbitration agreement with the plaintiff in connection with an AAA mass arbitration the law firm brought against the plaintiff).

Heather Stout, Manager of ADR Services
March 24, 2025
Page 5

### 4. This Mass Arbitration Cannot Proceed Unless It Is Administered Pursuant To The Terms Of The Batch Arbitration Process

Because the AAA's fee determination is inconsistent with the Batch Arbitration process, these cases can no longer proceed in a mass arbitration. The User Agreement expressly prohibits class, collective, or mass actions, ***except as*** specified in the Batch Arbitration process. The User Agreement provides in relevant part:

> **YOU AND COINBASE AGREE THAT, *EXCEPT AS SPECIFIED IN SUBSECTION 1.8 [I.E.*, THE BATCH ARBITRATION PROCESS], EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS, AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MASS ACTION BASIS.**

(Ex. C at App'x. 5 § 1.3 (emphasis in original).) The Batch Arbitration process also makes clear that "[t]his Batch Arbitration provision shall in no way be interpreted as authorizing a class, collective and/or *mass arbitration or action of any kind*, or arbitration involving joint or consolidated claims under any circumstances, *except as expressly set forth in this provision*." (*Id.* § 1.8 (emphasis added).) Because the AAA's fee determination violates the Batch Arbitration process generally and the *per batch* fee requirement specifically, these claims can no longer proceed in arbitration.

### 5. The AAA's Flawed Application Of The Batch Arbitration Process Is Compounded By The Fact That Labaton Is Using This Mass Arbitration To Pursue Frivolous Claims On Behalf Of A Highly Deficient Claimant Pool

Labaton submitted 10,491 substantially identical individual Demands against Coinbase—and threatened thousands more.[6] Each Demand falsely alleges that Coinbase's user Identity Verification Process ("IDV Process") violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"). As Coinbase has repeatedly explained to Labaton, prior to and after the commencement of these arbitrations, Coinbase is a financial institution exempt from BIPA. Labaton does not care.

---

[6] Labaton subsequently withdrew one Demand.

Heather Stout, Manager of ADR Services
March 24, 2025
Page 6

The Illinois legislature expressly exempts financial institutions from BIPA because such institutions are subject to stringent privacy requirements under federal law. *See* 740 ILCS 14/25(c) ("Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder."). Courts have recognized that "the term 'financial institution' is defined 'very broadly' under the GLBA and extends to entities not traditionally recognized as financial institutions." *See FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 457 (D. Md. 2004) (citation omitted). Courts have also applied the financial institution exemption where the relevant financial activity comprises only a part of the entity's operations and where the relevant financial activity is unrelated to alleged BIPA violations. *See Powell v. DePaul Univ.*, No. 21 C 3001, 2022 WL 16715887 (N.D. Ill. Nov. 4, 2022); *Doe v. Nw. Univ.*, 586 F. Supp. 3d 841 (N.D. Ill 2022); *Deurr v. Bradley Univ.*, 590 F. Supp. 3d 1160 (C.D. Ill. 2022). Here, financial activity is at the core of the services that Coinbase, a cryptocurrency platform, offers to the Claimants.

Labaton also enticed these Claimants to engage them as counsel using misleading social media advertisements. Unsurprisingly, Labaton's limited (if any) pre-claim vetting has resulted in a highly deficient Claimant pool. Among other things, Coinbase's sampling analysis has identified Claimants who:

- Are deceased;
- Were never Coinbase Users despite *each* Demand alleging otherwise;
- Did not engage in the IDV Process despite *each* Demand alleging otherwise;
- Did not upload a "selfie" despite *each* Demand alleging otherwise; and
- Did not reside in Illinois at the relevant time, as BIPA (an Illinois statute) requires.

Despite Coinbase repeatedly raising these threshold issues with Labaton prior to (and after) the submission of the Demands, Labaton refused to vet their clients.[7] And Labaton recently sought to submit amended Demands for five Claimants on the purported basis that "[e]ach of these amended, individual demands corrects a typographical error in the Claimant's name." (Ex. L.) But that lie barely masked material changes, such as changing one Claimant's name from "Vz Chill Bean" to

---

[7] Labaton has taken no steps to address the deficiencies identified by Coinbase. However, on September 27, 2024, Labaton withdrew from its representation of six claimants without explanation. (*See* Ex. K.) One of these individuals, Elliot Hensel, was never included on any of Labaton's Coinbase claimant lists and appears to have been deceased for over a year. This raises even more concerns.

Heather Stout, Manager of ADR Services
March 24, 2025
Page 7

"Jarrett Rodriguez" and another from "Chicago Public" to "Cedric Goss." These amendments confirmed that Labaton's affirmations under Supplementary Rule MA-2 were false. (*See id.*, MA-2 ("The filings must include an affirmation that the information provided *for each individual case* is true and correct to the best of the representative's knowledge." (emphasis added).)

Of course, this is not the first time that Labaton's failure to perform requisite due diligence in a BIPA mass arbitration has come to light. The Seventh Circuit recently denied Labaton's motion to compel arbitration on behalf of almost 50,000 claimants against Samsung because it failed to "adduce[] any evidence aside from their allegations" that the Claimants had arbitration agreements with Samsung. *Wallrich v. Samsung Elecs. Am., In*c., 106 F.4th 609, 613, 619 (7th Cir. 2024).[8]

\*\*\*

Accordingly, this letter provides notice to the AAA that Coinbase will not pay the March 3, 2025 invoice for Per Case Fees. Under the express terms of the User Agreement, these claims may no longer proceed in arbitration unless the AAA changes course. If the AAA will not do so, then Coinbase requests that the AAA promptly close these arbitrations because the parties have no agreement to arbitrate on the terms the AAA has proposed.

Coinbase reserves all rights to assert claims against all appropriate parties in the appropriate fora, including for the breach of Claimants' good faith obligations under the User Agreement to implement the Batch Arbitration process and for the tortious interference with that agreement.

Sincerely,

/s/ Michael W. McTigue Jr.

Michael W. McTigue Jr.

cc: All counsel of record
Neil B. Currie, Vice President, American Arbitration Association

---

[8] This was after Samsung repeatedly informed Labaton that the underlying claims were meritless and raised concerns with Labaton's vetting process. With striking similarities to this matter, Samsung's sampling revealed that the claimant pool included individuals who were fictitious, deceased, never resided in Illinois, and purportedly represented by other counsel pursuing the same claims against Samsung. *See* Respondent-Appellants' Opening Brief, *Wallrich, et al. v. Samsung Elecs. Am., Inc.*, No. 23-02842 (7th Cir. Sept. 25, 2023), ECF BL-34. *See also id.* at 23 (noting that the AAA, like Samsung, identified "inaccurate and/or incomplete information" in the claimants' filing materials, including incomplete addresses and names that appeared to be fake, like "Full Chck").