UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT BERNSTEIN, GINA GREEDER, AND JAMES LONERGAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>COINBASE GLOBAL, INC. AND COINBASE, INC.,<br><br>    Defendants. | Civil Case No. 1:25-cv-05313<br><br>Hon. Sharon Johnson Coleman,<br> Judge<br><br>Hon. Young B. Kim,<br> Magistrate Judge |

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO STAY PROCEEDINGS

  Defendants Coinbase Global, Inc. and Coinbase, Inc. (collectively "Coinbase" or "Defendants") submit this Reply in response to Plaintiffs' Opposition to Defendants' Motion to Stay Proceedings (ECF No. 33, "Opposition" or "Opp'n") and in further support of their Motion to Stay Proceedings (ECF No. 24, "Stay Motion" or "Mot."), pending the Seventh Circuit's decision in *Cisneros v. Nuance Communications, Inc.*, No. 24-2982 (7th Cir. filed Nov. 1, 2024) ("*Cisneros*").

  Plaintiffs' Opposition disregards the controlling legal standard and the direct and potentially dispositive impact of the forthcoming *Cisneros* decision. The Seventh Circuit is poised to address, for the first time, the scope of the Illinois Biometric Protection Act's ("BIPA") financial institution exemption and the timing for raising the issue in response to a complaint. Because Coinbase intends to move to dismiss based on this exemption, the issues on appeal in *Cisneros* go to the very heart of this case. (*See* Mot. ¶¶ 3-6.) Sensing they have no credible

reasons to oppose the stay, Plaintiffs mischaracterize the issues on appeal and ignore the overlap between the cases. But they ultimately offer no valid reason to press forward with costly and potentially wasteful litigation pending the resolution of critical legal questions by the Seventh Circuit that directly impact this case. A brief stay in this case would simplify and streamline the issues, conserve judicial resources, ensure consistent application of the law, avoid the needless risk of duplicative proceedings, and would not prejudice Plaintiffs.

## LEGAL STANDARD

Plaintiffs do not dispute the governing standard: a stay is warranted where it will "(1) simplify the issues in question and streamline the trial; (2) reduce the burden of litigation on the parties and court; and (3) [not] unduly prejudice or tactically disadvantage the non-moving party." (Opp'n at 4; *see also* Mot. ¶ 7.) Plaintiffs' claim that Coinbase faces a "heavy" burden is misplaced. (Opp'n at 4). The authority they invoke—*Schmude v. Sheahan*, No. 00 C 4580, 2004 WL 1179418 (S.D. Ill. May 25, 2004) (ECF 26-4)—concerned a fundamentally different context: a stay pending appeal of a sanctions order, where the movant's arguments had already been adjudicated by the same court. There, the court noted that a heightened showing was required, in contrast to the flexible and practical standard that controls here.

Plaintiffs' characterization of the governing standard is not only incomplete, but misleading. They claim that courts in this district "disfavor[] [motions to stay] because they bring resolution of the dispute to a standstill.'" (Opp'n at 4, quoting *Sullivan v. Sony Music Ent.*, No. 14 CV 731, 2014 WL 13111889, at *2 (N.D. Ill. July 15, 2014) (ECF 26-5).) Yet in the very same sentence (which Plaintiffs omit), the Court observed that stays "are sometimes appropriate." *Sullivan*, 2014 WL 13111889, at *2 (citation omitted). Indeed, the weight of the authority in this District is to the contrary: courts have repeatedly recognized that a stay of

discovery or of a proceeding in general is "not disfavored and [is] often appropriate where the motion to dismiss can resolve the case.'" *Lord v. PDD Holdings, Inc.*, No. 23-cv-04729, 2024 WL 5432081, at *2 (N.D. Ill. Feb. 28, 2024) (alteration in original) (quoting *Vital Proteins, LLC v. Ancient Brands, LLC*, No. 1:22-cv-02265, 2023 WL 5671857, at *3 (N.D. Ill. Sept. 1, 2023) (attached hereto as Exhibit A); *see also Vaughan v. Biomat USA, Inc.*, 1:20-cv-04241, 2020 WL 6262359, at *2 (N.D. Ill. Oct. 23, 2020) (ECF 33-12) (granting stay of BIPA action where "[i]t makes little sense for the parties or the court to expend time and resources litigating dispositive issues where appellate guidance is forthcoming."); *see also* Mot. ¶¶ 8-11.[1]

Plaintiffs also concede that a stay is warranted where "a potentially dispositive threshold issue" is presented, though they attempt to cabin this principle by reference to a handful of cherry-picked examples (*see* Opp'n at 4). But these examples are neither representative nor exhaustive. As the court explained in *Bilal v. Wolf*, No. 06 C 6978, 2007 WL 1687253, at *1 (N.D. Ill. June 6, 2007) (attached hereto as Exhibit B), motions to stay "are not disfavored and are often appropriate" in a variety of circumstances, including "where the motion to dismiss can resolve the case-at least as to the moving party," and "where the issue is a threshold one," such as jurisdiction, standing, or qualified immunity.

---

[1] Plaintiffs' reliance on other district court decisions (*see* Opp'n at 4) is similarly misplaced. In *Kuklinski v. Binance Capital Management Co.*, No. 21-cv-01425-SPM, 2022 WL 3018427 (S.D. Ill. July 29, 2022) (ECF 33-3), the court *granted* in part a stay pending resolution of motions to dismiss even where the movants had not pointed to any potentially dispositive threshold issues on appeal in other matters. *See Kuklinski*, 2022 WL 3018427, at *2 (granting in part defendants' motion for stay of discovery pending motions to dismiss but permitting limited jurisdictional discovery). The court only lifted the stay after ruling on defendants' motions to dismiss. *See Kuklinski v. Binance Cap. Mgmt. Co.*, No. 21-cv-001425-SPM, 2023 WL 2788654, at *12 (S.D. Ill. Apr. 4, 2023) (ECF 33-5). Likewise, *Quentere v. Cornfields, LLC*, No. 20 CV 7306, 2022 WL 22889697 (N.D. Ill. Apr. 8, 2022) (ECF 33-2), is readily distinguishable. There, the court denied a stay of the BIPA action because none of the pending appeals would have been dispositive of the claims at issue. Here, by contrast, the Seventh Circuit's decision in *Cisneros* would be both controlling and potentially dispositive.

# ARGUMENT

Contrary to Plaintiffs' arguments, Coinbase has met each of the three factors that govern the Court's analysis of whether a stay is warranted.

### A. The *Cisneros* Appeal Is Directly Relevant And Will Streamline Or Resolve The Issues In This Action

When the Illinois legislature enacted BIPA, it expressly exempted "financial institutions" as defined in the Gramm-Leach-Bliley Act of 1999 ("GLBA") and the rules promulgated thereunder. 740 ILCS 14/25(c). The *Cisneros* appeal marks the first time that the Seventh Circuit will address the scope and application of the Section 25(c) financial institution exemption, the key threshold issue in this case. (Mot. ¶¶ 4-6.)

As set forth in Coinbase's Motion, Plaintiff-Appellant Cisneros presented two issues to the Seventh Circuit that go to the heart of this litigation and stand to dispose of Plaintiffs' claims in their entirety. First, Cisneros asked the Seventh Circuit to determine whether the Section 25(c) financial institution exemption is an affirmative defense. Second, she has sought a determination as to whether the performance by an entity of identity verification for financial transactions qualified that entity as a financial institution exempt from BIPA. Plaintiffs' contention that "[t]he proposed stay will neither simplify nor streamline the issues in question" because "resolution of the appeal in *Cisneros* will have no impact on this case" (Opp'n at 5) is demonstrably false. These issues should be resolved before this action can proceed efficiently, and awaiting the Seventh Circuit's guidance will conserve the resources of both the parties and the Court.

*1. Whether the Financial Institution Exemption is an Affirmative Defense*

When filing her appeal, Cisneros directly asked whether the district court erred "in dismissing [the complaint] based on an affirmative defense"—referring to the BIPA financial institution exemption—at the Rule 12(b)(6) stage. (ECF 24-2 at 1; *see also* Mot. ¶ 5.) Ignoring

4

this point, Plaintiffs disingenuously suggest that "the issue of whether the Section 25(c) exemption is an 'affirmative defense' is not on appeal in *Cisneros*" (Opp'n at 7) by selectively citing only to Defendant-Appellee's Nuance's framing of the issues on appeal. Moreover, Nuance's appellate brief addresses this issue, devoting an entire section to the argument that the GLBA exemption is not an affirmative defense and, in any event, is apparent from the face of the complaint. (*See* Br. Of Defendant-Appellee Nuance Communications, Inc., 24-2982, ECF No. 22 (7th Cir. July 7, 2025) at 31-36 (attached hereto as Exhibit C).)[2] There can be no serious dispute that the nature and procedural posture of the financial exemption is a central issue on appeal in *Cisneros*.

    Plaintiffs' efforts to downplay the significance of this question are equally unavailing. They all but concede they intend to argue that the financial institution exemption cannot be resolved on a Rule 12(b)(6) motion because it is an affirmative defense. (*See, e.g.*, Opp'n at 6 n.2.)[3] Plaintiffs' stated intent to contest the applicability of the exemption at the pleading stage only underscores the need for a stay. Proceeding now would almost certainly result in supplemental briefing (or appeal depending on timing) after the Seventh Circuit rules in *Cisneros*. A modest stay pending resolution of *Cisneros* would thus "significantly advance judicial economy." *Varnado v. W. Liberty Foods*, No. 20 C 2035, 2021 WL 545628, at *1 (N.D. Ill. Jan. 5, 2021) (Coleman, J.) (ECF 24-8).

---

[2] Although the Opposition purports to cite Nuance's brief in several places (*see* Opp'n at 7-8), it in fact cites to *Plaintiff-Appellant's* brief.

[3] During the presentment before the Court on Coinbase's Stay Motion on July 14, 2025, Plaintiffs' counsel would not directly answer the Court's question as to whether they would make this argument.

       2.       *Whether Identity Verification for Financial Transactions Falls Under the Financial Institution Exception*

*Cisneros* also addresses the scope of the financial institution exemption as it would be applied in this action. Cisneros appealed the district court's holding that Nuance was a financial institution because it engaged in identity verification related to financial transactions. (Mot. ¶ 6; *Cisneros v. Nuance Commc'ns, Inc.*, No. 1:21-cv-04285, 2024 WL 5703970 (N.D. Ill. Oct. 4, 2024) (ECF 24-1).) Coinbase will likewise argue that its own identity verification activities, which are directly tied to financial transactions, bring it under the financial institution exception. The Seventh Circuit's forthcoming guidance on this precise issue will therefore streamline these proceedings.

Plaintiffs suggest that the identity verification issue in *Cisneros* is irrelevant here (*see* Opp'n at 10-11), but that is belied by their own Complaint, which is based almost entirely on Coinbase's identity verification practices for financial transactions. (*See, e.g.*, Compl. ¶¶ 3-4, 31, 34-37.)[4]

Plaintiffs contend that *Cisneros* is inapposite because "Coinbase is not a provider of voice authentication services to financial institutions." (Opp'n at 5.) That characterization is a red herring. Plaintiffs' focus on "voice identification services" ignores the reasoning of the district court and the issues on appeal. The district court in *Cisneros* relied on the Federal Reserve Board's determination that "authenticating the identity of persons conducting financial

---

[4]    Moreover, the Complaint cites to several sources referencing both Coinbase's "financial" services and the identity verification that both Jumio and Onfido provide in connection with financial services. (*See* Compl. ¶ 33, n.17 (citing and providing link to Coinbase blog entitled "*US traders can now trade regulated leveraged futures through Coinbase Financial Markets.*"); *see also id.* ¶ 35, n.21 (citing and providing link to Jumio press release entitled "*Jumio Records Largest Sales Quarter to Date, Extends Its Leadership in Financial Services to the Bitcoin and ICO Markets*"), *id.* ¶ 41, n.32 (citing and providing link to Onfido website page that has the heading "FINANCIAL SERVICES: Onboarding for Digital Banks.").)

6

and nonfinancial transactions" is "closely related to banking." *Cisneros*, 2024 WL 5703970, at *4 (quoting 12 C.F.R. § 225.86(a)(2)(iii)) (ECF 24-1). Because Nuance engaged in this activity, it was deemed a financial institution exempt from BIPA. *Id.*[5] The focus was not on the type of authentication, but rather on identity verification for financial transactions generally—the very activity that forms the basis of Plaintiffs' claims against Coinbase.

Second, Plaintiffs place undue importance on the fact that the parties did not dispute that Charles Schwab is a financial institution (*see* Opp'n at 7-8). The district court in *Cisneros* expressly rejected the argument that Nuance was exempt from BIPA merely as an affiliate of a financial institution. *Cisneros*, 2024 WL 5703970, at *2. Instead, the court found that Nuance itself qualified as a financial institution because it authenticated identities in connection with financial transactions. *Id.*, at *4. On appeal, Plaintiff-Appellant Cisneros seeks to overturn this holding. The district court's finding—and the challenge to it on appeal—are directly relevant here, where Coinbase's identity authentication practices are at the core of Plaintiffs' allegations.

Plaintiffs also argue that the issues on appeal in *Cisneros* are irrelevant because they have not expressly pled in their Complaint that Coinbase is a financial institution. (*E.g.*, Opp'n at 6, 8.) This argument is both inaccurate and further underscores the need for a stay. Should the Seventh Circuit affirm the district court's decision in *Cisneros*, Plaintiffs' own allegations—that Coinbase engaged in identity verification related to financial transactions (*see* Compl. ¶¶ 3-4, 31,

---

[5] Under the GLBA, a financial institution is an entity that engages in financial activities as described in 12 U.S.C. 1843(k). 15 U.S.C. 6809(3). Under Section 1843(k)(4)(F), financial activity includes activity that the Federal Reserve Board has determined to be "closely related to banking." Therefore, because Nuance was engaged in activity that the Federal Reserve Board determined to be closely related to banking, it was a financial institution and exempt from BIPA.

7

34-37)—would be sufficient to warrant immediate dismissal.[6] A stay is therefore warranted to allow the Seventh Circuit to resolve this critical, dispositive issue, consistent with this Court's precedent favoring efficiency and conservation of judicial resources. (*See* Mot. ¶¶ 8-9.)

Finally, Plaintiffs suggest that the Seventh Circuit may resolve the *Cisneros* appeal on procedural grounds, contending that the issue of Nuance's eligibility for the BIPA financial institution exemption was not properly raised below. (Opp'n at 5.) But this argument is also unavailing. Plaintiff-Appellant in *Cisneros* asserts that the district court's procedures "did not allow [plaintiff] the opportunity for briefing" in response to Nuance's notice of supplemental authority[7] of an opinion granting dismissal based on the BIPA financial exemption. (*Id.*, citing ECF 24-2 at 12.) Yet, the district court in *Cisneros* made clear that "[t]he Court expressly gave Cisneros opportunity to respond" but "Cisneros did not do so." *Cisneros*, 2024 WL 5703970, at *3, n.3. Thus, the procedural posture of the issue is not an impediment to the Seventh Circuit's consideration of the merits.[8]

---

[6] Coinbase has additional arguments for why it is a financial institution exempt from BIPA, including additional arguments that can be made on the face of the Complaint. However, affirmance of *Cisneros* by the circuit court will provide a clear basis for this Court to dispose of the matter entirely.

[7] *McGoveran v. Amazon Web Services, Inc.*, No. 1:20-cv-01399-SB, 2023 WL 2683553 (D. Del. Mar. 29, 2023) (ECF 33-1 at 6).

[8] Contrary to Plaintiffs' assertions (*see* Opp'n at 5), Coinbase has not "sidestep[ped]" this issue. Coinbase has consistently identified the three issues raised in Plaintiff-Appellant's brief and noted that two were directly relevant to this action. (*See* Mot. ¶¶ 6, 6 n.2; *see also* Defendants' Reply in Further Support of their Motion to Stay Proceedings and For an Extension of Time to Respond to the Complaint (ECF No. 31, "Prior Reply") ¶ 7, n.2.) It is Plaintiffs, and not Coinbase, who have engaged in selective and inconsistent arguments. When seeking to minimize the relevance of *Cisneros*, Plaintiffs rely exclusively on Nuance's arguments on appeal. Yet, when attempting to suggest that the Seventh Circuit may dispose of the appeal on procedural grounds, Plaintiffs abruptly shift to rely solely on Plaintiff-Appellant's briefing.

8

**B.  A Brief Stay Will Reduce The Burden Of Litigation On The Court And The Parties**

Plaintiffs assert that "[t]he proposed stay will not reduce the burden of litigation on the Court and the parties." (Opp'n at 11.) Plaintiffs' primary argument is that "Coinbase has made plain that it intends to charge forward with its Rule 12(b)(6) motion, regardless of the outcome of *Cisneros*." (*Id.*) But, as explained *supra* at 4-8, proceeding now risks unnecessary expenditure of the Court's and the parties' time and resources on matters that may soon be mooted or otherwise clarified by the Seventh Circuit in *Cisneros*. That approach would also create the substantial likelihood of the parties having to supplement or amend any prior motion to dismiss briefing in light of the *Cisneros* decision.

Plaintiffs also fail to dispute that courts routinely stay BIPA actions pending resolution of related appeals. (*See* Mot. ¶¶ 7-9; Prior Reply ¶ 4.) This is unsurprising: BIPA frequently presents novel legal questions, and there is a well-established practice of staying proceedings while appellate courts address such threshold issues. Plaintiffs' attempt to distinguish the cited cases because they present different threshold issues (*see* Opp'n at 11-12) is unpersuasive. *Cisneros* marks the first time the Seventh Circuit will address the scope of BIPA's financial institution exemption—a decision that will likely be determinative in this case.

**C.  A Brief Stay Will Not Prejudice Plaintiffs**

Plaintiffs' assertion that a stay would "prejudice and tactically disadvantage" them is unfounded. Plaintiffs first speculate that *Cisneros* might be settled before the Seventh Circuit issues a decision. (Opp'n at 13.) But that possibility is inherent in any request for a stay pending a related appeal. Should that occur, the Court could promptly lift the stay and proceed without undue delay.

Plaintiffs next argue a stay may not be brief, noting briefing has not been completed and oral argument has not yet been scheduled in *Cisneros*. (*See id.* at 13-14.) But Plaintiff-Appellant's reply brief in *Cisneros* is due imminently—on August 11, 2025, just one week from today—and oral argument is expected to follow within a few months. Thus, any stay would be limited. (*See* Mot. ¶ 10.)[9]

Plaintiffs also contend that a stay would "block" their ability to pursue discovery from Coinbase and third parties. (Opp'n at 14.)[10] This argument ignores the inefficiency of proceeding with discovery while a dispositive legal question remains pending before the Seventh Circuit. The applicability of BIPA's financial exemption to Coinbase is a pure question of law, unlikely to require any discovery for its resolution. Proceeding with discovery now would only serve to waste resources, saddle the court with discovery disputes, and unnecessarily complicate the litigation.

Moreover, Plaintiffs' own conduct belies their claim of prejudice. Their counsel has already served overbroad and harassing discovery requests and subpoenas on third parties, seeking irrelevant information. (*See e.g.*, Plaintiffs' Amended Notice of Subpoena to Jumio,

---

[9] Plaintiffs imply that Coinbase misstated the deadline for Plaintiff-Appellant's reply. (*See* Opp'n at 13.) That is not the case. At the time that Coinbase filed its Stay Motion, on July 3, 2025, that reply was due on July 28, 2025. The Seventh Circuit subsequently granted Plaintiff-Appellant a two-week extension of that deadline, through August 11, 2025. *See Cisneros*, ECF No. 25 (attached hereto as Exhibit D).

[10] In support of this argument, Plaintiffs cite *Clinton v. Jones*, 520 U.S. 681 (1997), to suggest that "delaying trial would increase the danger of prejudice." (Opp'n at 14.) That case is not remotely comparable. In *Clinton*, the Supreme Court was concerned about the effects of delaying trial until then-President Clinton left office, potentially more than six years from the time the district court stayed the trial, *see Clinton*, 520 U.S. at 707-08; *see also Jones v. Clinton*, 869 F. Supp. 690, 669-700, (E.D. Ark. 1994) (calculating the time potentially remaining in President Clinton's term were he re-elected). Here, a stay pending the outcome in *Cisneros* would obviously be for a much shorter period of time.

dated July 1, 2025 (attached hereto as Exhibit E), and Plaintiffs' Amended Notice of Subpoena to Onfido, dated July 1, 2025 (attached hereto as Exhibit F)). Both of the subpoenaed third parties, Jumio and Onfido, have objected in full and refused to produce documents, citing the overbreadth, irrelevance, and burdensome nature of the requests. This conduct underscores that Plaintiffs' desire to proceed with discovery is a litigation tactic, not a genuine effort to advance the merits of their claims. (*See* Prior Reply ¶ 13.)

Plaintiffs further concede that they are not seeking a preliminary injunction, which undercuts any claim of prejudice from a brief stay. (*See* Mot. ¶ 10.) Their reliance on *Mutnick v. Clearview AI, Inc.*, Nos. 20 C 512, 20 C 846, 2020 WL 8093509 (N.D. Ill. May 19, 2020) (ECF 33-20) (*see* Opp'n at 14), to argue that the fact they seek (non-preliminary) injunctive relief counsels in favor of a stay, is misplaced. In *Mutnick*, the denial of a stay was based on unique jurisdictional and transfer issues (not present here), as well as plaintiffs' pursuit of injunctive relief. *Id.* at *2.[11]

Finally, Plaintiffs reference the prior AAA mass arbitration initiated by their counsel against Coinbase. (*See* Opp'n at 14-15.) Coinbase has already corrected Plaintiffs' misstatements regarding that matter, noting that both parties (not just Coinbase, as Plaintiffs previously asserted (*see* Response to Defendants' July 3, 2025 Motions and Notices for Presentment (ECF No. 26, "Response") ¶ 3)) submitted issues to the AAA Process Arbitrator and that Plaintiffs did not "prevail" on their challenge to the Coinbase User Agreement's Batch Arbitration provision that was designed to efficiently administer mass arbitrations. (*See* Prior Reply ¶¶ 9-10.) Tellingly, the

---

[11] Plaintiffs' counsel also express some unsubstantiated concern that delay would hamper the ability to locate putative class members. (*See* Opp'n at 14.) While no class could ever be certified, counsel's arguments ring hollow as they claim to represent over 19,000 individuals with similar claims. (*See* ECF No. 33-22 ¶ 2.)

11

Opposition does not address and thus abandons those points.[12] In fact, Plaintiffs attach as an exhibit the Process Arbitrator's ruling where, in relevant part, he "found that the Batch Arbitration provisions are conscionable and enforceable whether applying the FAA, California law, or Illinois law." (ECF No. 33-22 ¶ 40.)

Plaintiffs instead shift their focus to Coinbase's subsequent non-payment of the arbitration fees, alleging this caused delay. (*See* Opp'n at 15.) Yet, as Coinbase has explained—and Plaintiffs do not dispute—Plaintiffs' counsel urged the AAA to disregard the contractually-mandated fee provisions set forth in the Batch Arbitration provision, in violation of the arbitration claimants' (including Plaintiffs) obligation "'to cooperate in good faith with the AAA to implement the Batch Arbitration process *including the payment of single filing and administrative fees for batches of Requests, as well as any steps to minimize the time and costs of arbitration.*'" (Prior Reply ¶¶ 9, 11.) When the AAA acquiesced to this improper request, Coinbase exercised its rights under the AAA's rules to decline to pay the fees. (*See id.* ¶ 11; *see also* ECF No. 33-23 (Coinbase's March 24, 2025, letter to the AAA, exhibited with Plaintiffs' Opposition, which sets forth this position).)[13] Any delay was thus attributable to Plaintiffs, not

---

[12] The Opposition asserts that the parties spent "many months of litigating before a Process Arbitrator." (Opp'n at 2.) But, again, *both* parties requested that issues be submitted to the Process Arbitrator.

[13] In Coinbase's letter to the AAA, it further noted that not only did Plaintiffs' counsel's position on fees cause the arbitration claimants to violate their obligations under the Batch Arbitration provision, but it "has resulted in it imposing a fee structure that increases the arbitration administrative costs for both Coinbase and Claimants *by nearly a hundredfold*." (ECF No. 33-23 at 4 (emphasis added).) This was in circumstances where Plaintiffs' counsel's had signed up a large pool of claimants in the first place so as to exert fee pressure on Coinbase, and where Coinbase had identified significant deficiencies with that claimant pool including claimants who "[a]re deceased" or who did not engage in the identity verification process despite each arbitration demand alleging otherwise. (*Id.* at 6.)

Coinbase. In any event, fewer than two months elapsed between the closure of the arbitrations and the filing of this action. (*See id.* ¶ 12, citing Compl. ¶¶ 57-60.)

In sum, Plaintiffs' arguments against a stay are unpersuasive. A brief stay pending the seventh Circuit's decision in *Cisneros* would simplify the issues and streamline the present action, promote efficiency, conserve judicial resources, and cause no cognizable prejudice to Plaintiffs or the proposed class.

Dated: August 4, 2025                  Respectfully submitted,

*/s/ William E. Ridgway*
William E. Ridgway (6325417)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
320 South Canal
Chicago, IL 60606
Telephone: (312) 407-0700
william.ridgway@skadden.com

Michael W. McTigue Jr. (NY Bar #5964192)
Meredith C. Slawe (NY Bar #5964226)
Colm P. McInerney (NY Bar #4422309)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
michael.mctigue@skadden.com
meredith.slawe@skadden.com
colm.mcinerney@skadden.com

*Counsel for Defendants Coinbase Global, Inc. and Coinbase, Inc.*